IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| RODNEY REED, | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | ACTION NO. 1:19-CV-794-LY |
| | § | **CAPITAL CASE** |
| BRYAN GOERTZ, Criminal District | § | |
| Attorney, Bastrop County, Texas | § | |
| *Defendant*. | § | |
| | § | |

————————————————————————

**DEFENDANT GOERTZ'S**
**AMENDED MOTION TO DISMISS FOR WANT OF JURISDICTION AND**
**FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED**

————————————————————————

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

MARK PENLEY
Deputy Attorney General
For Criminal Justice

EDWARD L. MARSHALL
Chief, Criminal Appeals Division

MATTHEW OTTOWAY
Assistant Attorney General
State Bar No. 24047707
*Counsel of Record*

Post Office Box 12548, Capitol Station
Austin, Texas 78711
Tel.: (512) 936-1400
Fax: (512) 320-8132
Email: *matthew.ottoway@oag.texas.gov*

*Counsel for Defendant Goertz*

# TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................................. i

TABLE OF AUTHORITIES ........................................................................................ iii

INTRODUCTION ......................................................................................................... 1

STATEMENT OF THE CASE...................................................................................... 1

SUMMARY OF THE ARGUMENT ........................................................................... 4

ARGUMENT ................................................................................................................. 4

I.     The Standards of Review .................................................................................... 4

      A.    Rule 12(b)(1)............................................................................................ 4

      B.    Rule 12(b)(6)............................................................................................ 5

II.    The Court Lacks Jurisdiction. .......................................................................... 5

      A.    The *Rooker–Feldman* doctrine strips the Court of jurisdiction ............... 5

      B.    The Eleventh Amendment provides Goertz with immunity....................... 6

III.   Alternatively, Plaintiff Does Not State a Claim upon Which Relief May Be Granted.................................................................................................................. 8

      A.    Plaintiff's claims are barred by the applicable statute of limitations ....... 8

      B.    Goertz has absolute immunity from suit ................................................. 8

      C.    Plaintiff's procedural due process Claim fails as a matter of law and must be dismissed as it does not state a claim upon which relief may be granted (Claim One) ............................................................................................. 9

            1.    Requiring an adequate chain of custody does not violate due process ................................................................................. 10

            2.    The CCA's definition of "exculpatory" does not offend fundamental fairness ................................................................... 12

            3.    The error—and correction—of an inadvertent signature does not violate due process ...................................................................... 13

            4.    Use of time limitations in a postconviction DNA testing scheme does not offend fundamental fairness ...................................... 14

            5.    Due process does not mandate a particular style of materiality review...................................................................................... 15

            6.    Plaintiff cannot show a due process violation based upon requests he has not made under Chapter 64 ............................................ 17

      D.    Relief cannot be granted because Plaintiff's access-to-the-courts claim fails as a matter of law, so it must be dismissed (Claim Two) ......................... 17

E.     As a matter of law, Plaintiff has suffered no Eighth Amendment deprivation, so this claim must be dismissed (Claim Three) ......................................................... 18

F.     Plaintiff's actual-innocence claim must be dismissed because it fails as a matter of law (Claim Four) ............................................................................. 19

G.     The Court should not exercise pendant jurisdiction over Plaintiff's Texas Constitution claim, which has to be dismissed in any event because it cannot succeed as a matter of law (Claim Five) .................................................... 19

CONCLUSION ............................................................................................................... 20

CERTIFICATE OF COMPLIANCE ............................................................................. 21

CERTIFICATE OF SERVICE ...................................................................................... 22

# TABLE OF AUTHORITIES

## Cases

*Air Evac EMS, Inc. v. Tex. Dep't of Ins.*, 851 F.3d 507 (5th Cir. 2017)..........................7

*Alvarez v. Attorney Gen. for Fla.*, 679 F.3d 1257 (11th Cir. 2012)....................6, 18, 19

*Anderson v. State*, 831 A.2d 858 (Del. 2003) ...........................................................17

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ......................................................................5

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ........................................................5

*Bryant v. Tex. Dep't of Aging & Disability*, 781 F.3d 764 (5th Cir. 2015) ...................7

*Cantu v. State*, 939 S.W.2d 627 (Tex. Crim. App. 1997) ............................................20

*Cookson v. State*, 17 A.3d 1208 (Me. 2011) ..............................................................11

*Cullen v. Pinholster*, 563 U.S. 170 (2011)................................................................16

*Curry v. State*, 186 S.W.3d 39 (Tex. App.—Houston [1st Dist.] 2005).......................20

*Dist. Attorney's Office for the Third Judicial Dist. v. Osborne*, 521 F.3d 1118
   (9th Cir. 2008)........................................................................................................17

*Dist. Attorney's Office for the Third Judicial Dist. v. Osborne*, 557 U.S. 52 (2009) ........... *passim*

*Dossett v. State*, 216 S.W.3d 7 (Tex. App.—San Antonio 2006)................................11

*Emerson v. Thaler*, 544 F. App'x 325 (5th Cir. 2013)................................................19

*Engle v. Isaac*, 456 U.S. 107 (1982) ........................................................................10

*Enochs v. Lampasas Cty.*, 641 F.3d 155 (5th Cir. 2011) ............................................19

*Esteves v. Brock*, 106 F.3d 674 (5th Cir. 1997) .......................................................7, 9

*Ex parte Reed*, No. WR-50,961-07, 2015 WL 831673 (Tex. Crim. App. Feb. 23, 2015).............. 3

*Ex parte Reed*, Nos. WR-50,961-07 to -08, 2017 WL 2131826
   (Tex. Crim. App. May 17, 2017)..............................................................................4

*Ex parte Reed*, Nos. WR-50,961-08 to -09, 2019 WL 2607452
   (Tex. Crim. App. June 26, 2019)..........................................................................4, 15

*Ex parte Young*, 209 U.S. 123 (1908) ........................................................................7

*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005) .........................5

*Ford Motor Co. v. Dep't of Treasury of Ind.*, 323 U.S. 459 (1945) ..............................6

*Ford v. Wainwright*, 477 U.S. 399 (1986) ................................................................18

*Green v. Thaler*, 699 F.3d 404 (5th Cir. 2012)..........................................................13

*Heck v. Humphrey*, 512 U.S. 477 (1994) ..................................................................18

*Holberg v. State*, 425 S.W.3d 282 (Tex. Crim. App. 2014) ........................................15

*In re Pruett*, 784 F.3d 287 (5th Cir. 2015)................................................................18

*K.P. v. LeBlanc*, 627 F.3d 115 (5th Cir. 2010) ................................................................ 7

*K.P. v. LeBlanc*, 729 F.3d 427 (5th Cir. 2013) ................................................................ 7

*Lance v. Dennis*, 546 U.S. 459 (2006) ............................................................................ 6

*Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613 (2002) .......................... 6

*Lewis v. Casey*, 518 U.S. 343 (1996) ............................................................................ 18

*Medina v. California*, 505 U.S. 437 (1992) ............................................................. 13, 14

*Meinhard v. State*, 371 P.3d 37 (Utah 2016) ................................................................ 16

*Mosley v. Tex. Health & Human Servs. Comm'n*, No. 17-0345, 2019 WL 1977062
    (Tex. May 3, 2019) .................................................................................................... 20

*Murray v. Giarratano*, 492 U.S. 1 (1989)............................................................... 16, 18

*Parker & Parsley Petroleum Co. v. Dresser Indus.*, 972 F.2d 580 (5th Cir. 1992) .................. 19

*Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984) ................................ 7

*Pennsylvania v. Finley*, 481 U.S. 551 (1987) ................................................................ 16

*Pruett v. Choate*, 711 F. App'x 203 (5th Cir. 2017)........................................................ 9

*Quern v. Jordan*, 440 U.S. 332 (1979) ............................................................................ 7

*Ramming v. United States*, 281 F.3d 158 (5th Cir. 2001) ......................................... 4, 5

*Reed v. State*, 541 S.W.3d 759 (Tex. Crim. App. 2017)....................................... *passim*

*Reed v. Stephens*, 739 F.3d 753 (5th Cir. 2014) ........................................................... 15

*Rivera v. Illinois*, 556 U.S. 148 (2009) ......................................................................... 10

*Ryan v. Gonzales*, 568 U.S. 57 (2013) .......................................................................... 16

*Savory v. Lyons*, 469 F.3d 667 (7th Cir. 2006) .............................................................. 8

*Skinner v. Switzer*, 562 U.S. 521 (2011) .............................................................. 6, 9, 19

*Smith v. Phillips*, 455 U.S. 209 (1982) ......................................................................... 16

*State v. Swearingen*, 424 S.W.3d 32 (Tex. Crim. App. 2014)....................................... 13

*Stockman v. Fed. Election Comm'n*, 138 F.3d 144 (5th Cir. 1998)............................ 4, 5

*Strickland v. Washington*, 466 U.S. 668 (1984) ........................................................... 17

*Trevino v. Thaler*, 569 U.S. 413 (2013).......................................................................... 16

*United States v. Bagley*, 473 U.S. 667 (1985) .............................................................. 17

*Walker v. Epps*, 550 F.3d 407 (5th Cir. 2008) ................................................................ 8

*Whitaker v. Collier*, 862 F.3d 490 (5th Cir. 2017)......................................................... 18

*Whitaker v. Livingston*, 732 F.3d 465 (5th Cir. 2013) .................................................. 18

*Wilson v. Garcia*, 471 U.S. 261 (1985)............................................................................ 8

*Yancy v. United Surgical Partners Int'l, Inc.*, 236 S.W.3d 778 (Tex. 2007)................. 20

**Statutes**

18 U.S.C. § 3600(a)(10)(B) ............................................................. 14

18 U.S.C. § 3600(a)(4) ................................................................... 10

42 Pa. Cons. Stat. § 9543.1(d)(1)(ii) .............................................. 10

42 U.S.C. § 1983 ............................................................... 1, 4, 8, 18

Cal. Penal Code § 1405(g)(2) ......................................................... 10

Fla. Stat. § 925.11(f)(2) ................................................................. 10

Tex. Civ. Prac. & Rem. Code § 16.003(a) ......................................... 8

Tex. Code Crim. Proc. art. 64.03(a)(1)(A)(ii) ................................. 11

Tex. Code Crim. Proc. art. 64.03(a)(2)(A) ..................................... 12

Tex. Code Crim. Proc. art. 64.03(a)(2)(B) ..................................... 14

**Rules**

Fed. R. Civ. P. 12(b)(1) ................................................................... 4

Fed. R. Civ. P. 12(b)(6) ................................................................... 5

**Treatises**

23 C.J.S. Criminal Procedure § 1150 (2019) .................................. 11

## INTRODUCTION

This is civil-rights action filed pursuant to 42 U.S.C. § 1983. Plaintiff is a Texas death row inmate scheduled to be executed November 20, 2019. He filed his initial complaint, purporting to challenge Texas's postconviction DNA testing scheme, Chapter 64 of the Texas Code of Criminal Procedure, on August 8, 2019. *See generally* Compl., ECF No. 1. On October 1, 2019, he amended his complaint, the primary differences between the two pleadings being that he dropped several defendants, no longer requests injunctive relief, and adds a claim under the Texas Constitution. *See generally* Am. Compl., ECF No. 10. Defendant Bryan Goertz, the Criminal District Attorney of Bastrop County, Texas respectfully moves to dismiss Plaintiff's amended complaint as jurisdictionally deficient and failing to state a claim for relief which may be granted.

## STATEMENT OF THE CASE

Plaintiff was convicted of capital murder for the abduction, rape, and strangulation of Stacey Stites and sentenced to death. *Reed v. State*, 541 S.W.3d 759, 763 (Tex. Crim. App. 2017). "This case has an extensive post-conviction litigation history." *Id*. Direct appeal was unsuccessful for Plaintiff. *Id*. So were the six state habeas applications that followed. *Id*. at 763–64. Federal review of his conviction, including by this Court, did not afford him relief either. *Id*. at 764.

In April 2014, the State moved to set Plaintiff's execution. At a July 2014 hearing on the matter, and at which the trial court set an execution date, Plaintiff moved for DNA testing "of a large number of items," though he did "not clearly or consistently identif[y the] items he s[ought] to test." *Id*. A hearing on the Chapter 64 motion commenced at which both Plaintiff and the State called witnesses. *Id*. at 765–67. "After holding [the] live evidentiary hearing, the trial judge denied [Plaintiff's] DNA testing request and issued findings of fact and conclusions of law." *Id*. at 767. After a remand, "the judge made supplemental findings of fact and conclusions of law." *Id*.

On appeal, the CCA found that the exhibits admitted at Plaintiff's capital murder trial and housed by the Bastrop District Clerk's Office were not subject to a sufficient chain of custody as required by Chapter 64. *Id*. at 769–70. This was based on testimony and evidence that the exhibits "were handled by ungloved attorneys, court personnel, and possibly the jurors," and that they were "not separately packaged, but instead commingled in a common repository." *Id*. at 770. Further, Plaintiff's witnesses admitted "there is 'a good chance that [the items in the clerk's boxes are] contaminated evidence'" and "that handling evidence without gloves would tamper with the evidence." *Id*. (alteration in original). Accordingly, the CCA held that the evidence "demonstrates that the manner in which the [trial] evidence was handled and stored casts doubt on the evidence's integrity, especially for the [touch DNA] testing" Plaintiff sought. *Id*.

The CCA then concluded that other evidence likely contained biological material suitable for DNA testing, reversing the trial court on this point. *Id*. at 770–73. However, the court concluded that, assuming the non-contaminated evidence produced exculpatory DNA test results, Plaintiff did not prove by a preponderance of the evidence that he would not have been convicted, also a requirement under Chapter 64. *Id*. at 773–77. This is because Plaintiff failed to show that some of the items were "connected to Stites's capital murder," *id*. at 774, or were "relevant to establishing Stites's murderer," *id*. at 775. Further, presumed exculpatory results "do not affect the State's time line supporting its theory tying the murder to the rape" or "support [Plaintiff's] consensual-relationship defense." *Id*. at 776. And even assuming the DNA results would match Jimmy Fennell, Stites's then-fiancé, "the jury would most likely not be surprised to learn that [his] profile was found on his own truck or on items found in his truck." *Id*.

> Moreover, any presumptive exculpatory results, including evidence of a redundant DNA profile, are relatively weak evidence because of the specific biological material [Plaintiff] seeks to test. [Plaintiff's] experts definit[iv]ely opined that all of the items [he] identified have biological material because epithelial cells are

ubiquitous on handled materials. According to the hearing testimony, testing technology has advanced to the degree that a small number of skin cells may yield a DNA profile. But as [Plaintiff's] DNA experts explained the exchange principle, there is an uncertain connection between the DNA profile identified from the epithelial cells and the person who deposited them. Just as a person may deposit his own epithelial cells, he may deposit another's if those cells were exchanged to him by touching an item another has touched. So the exchange principle may support an equally persuasive argument that the DNA profile discovered from an epithelial cell was not deposited by the same person associated with the particular DNA profile. And as with all DNA testing generally, touch DNA analysis cannot determine when an epithelial cell was deposited. So in addition to being unable to definitively show who left the epithelial cell, it is unable to show when it was deposited.

*Id*. (footnote omitted). Accordingly, the CCA found that Plaintiff's "experts contradict[ed] his argument that touch DNA would prove the perpetrator's identity." *Id*.

Finally, the CCA affirmed the finding that Plaintiff failed to prove that his DNA testing request was not made to unreasonably delay the execution of his sentence or the administration of justice, another requirement under Chapter 64. *Id*. at 777–80. Plaintiff's "untimely request to test a significant number of items, including some items the State ha[d] agreed to test and others whose relevance to the crime are unknown, supports the conclusion that th[e] motion was intended to delay his impending execution date." *Id*. at 778. Plaintiff also "initiated the negotiations [for DNA testing with the State] only after the [Fifth] Circuit Court of Appeals denied his request for a certificate of appealability approximately three days before." *Id*. at 779. And "Chapter 64 had existed with only slight variations for over thirteen years at the time [Plaintiff] filed his motion, and there d[id] not appear to be any factual or legal impediments that prevented [him] from availing himself of post-conviction DNA testing earlier." *Id*. For these three reasons, the denial of DNA testing was affirmed. *Id*. at 780.

After the conclusion of federal habeas review, Plaintiff filed three more state habeas applications. The first of these three caused Plaintiff's initial execution date to be stayed. *Ex parte Reed*, No. WR-50,961-07, 2015 WL 831673, at *1 (Tex. Crim. App. Feb. 23, 2015). Those

applications, however, have now been denied or dismissed. *Ex parte Reed*, Nos. WR-50,961-08 to -09, 2019 WL 2607452, at *1–3 (Tex. Crim. App. June 26, 2019); *Ex parte Reed*, Nos. WR-50,961-07 to -08, 2017 WL 2131826, at *1–2 (Tex. Crim. App. May 17, 2017). With no pending state court litigation, the trial court thus entered an execution date for November 20, 2019. Execution Order 1–2, *State v. Reed*, No. 8701 (21st Dist. Ct., Bastrop County, Tex. July 24, 2019).

## SUMMARY OF THE ARGUMENT

The Court lacks jurisdiction for two reasons: Plaintiff is attacking a state court's opinion rather than attacking a state's postconviction DNA testing scheme, and Eleventh Amendment immunity bars Plaintiff's claims. As to the claims themselves, they are untimely under the statute of limitations applicable to § 1983 claims—Texas's two-year personal injury limitations period. Plaintiff also fails to state a claim for relief which may be granted—even accepting his allegations as true, the denial of DNA testing did not violate fundamental fairness, it did not bar him access to the courts, it does not constitute cruel and unusual punishment, it does not deny him the opportunity to prove his innocence, and it does not violate the Texas Constitution. As such, Plaintiff's claims must be dismissed.

## ARGUMENT

### I.    The Standards of Review

#### A.    Rule 12(b)(1)

"Federal courts are courts of limited jurisdiction, and absent jurisdiction conferred by statute, lack the power to adjudicate claims." *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998). "Motions filed under Rule 12(b)(1) of the Federal Rules of Civil Procedure allow a party to challenge the subject matter jurisdiction of a district court to hear a case." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). "It is incumbent on all federal courts to dismiss an action whenever it appears that subject matter jurisdiction is lacking." *Stockman*, 138 F.3d at

151. "Lack of subject matter jurisdiction may be found in any one of three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidence in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Ramming*, 281 F.3d at 161. "[T]he plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Id*.

### B. Rule 12(b)(6)

To survive a Rule 12(b)(6) motion to dismiss, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although the complaint need not contain "'detailed factual allegations,'" it must provide more than "'naked assertion[s]' devoid of 'further factual enhancement.'" *Id*. (alteration in original) (quoting *Twombly*, 550 U.S. at 557). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, will not suffice." *Iqbal*, 556 U.S. at 678. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id*. (quoting *Twombly*, 550 U.S. at 557).

## II. The Court Lacks Jurisdiction.

### A. The *Rooker–Feldman* doctrine strips the Court of jurisdiction.

"The *Rooker–Feldman* doctrine . . . [prohibits] cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejections of those arguments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). "[U]nder . . . the

*Rooker–Feldman* doctrine, lower federal courts are precluded from exercising appellate jurisdiction over final state-court judgments." *Lance v. Dennis*, 546 U.S. 459, 463 (2006).

At bottom, Plaintiff challenges the CCA's application of Chapter 64 to him. *See, e.g.*, Am. Compl. 30–31 ¶ 94 ("The CCA has interpreted [Chapter] 64 to bar DNA testing even where, as in [Plaintiff's] case, realistically possible exculpatory DNA results from such testing have the capacity to prove innocence based solely on the State's handling of evidence."). This is unlike the plaintiff in *Skinner v. Switzer*, who clarified that he was not challenging "the prosecutor's conduct or the decisions reached by the CCA in applying Chapter 64 to his motions." *Skinner v. Switzer*, 562 U.S. 521, 530 (2011). Indeed, Plaintiff's amended complaint makes clear he is doing the very thing that *Skinner* prohibits—he identifies Goertz as the individual who "opposed, and continues to oppose, [Plaintiff's] requests . . . to conduct DNA testing" and "has directed or otherwise caused each of the non-party custodians . . . to refuse to allow [Plaintiff] to conduct DNA testing on the evidence in their custody." Am. Compl. 3 ¶ 5. Because Plaintiff clearly challenges "the prosecutor's conduct," *Skinner*, 562 U.S. at 530, and "the adverse CCA decision[]," *id.* at 532, his claims are barred by the *Rooker–Feldman* doctrine and the Court must dismiss them as it lacks jurisdiction. *See Alvarez v. Attorney Gen. for Fla.*, 679 F.3d 1257, 1262–64 (11th Cir. 2012) (barring under the *Rooker–Feldman* doctrine a "procedural due process challenge [that] boil[ed] down to a claim that the state court judgment itself caused him constitutional injury by arbitrarily denying him access to the physical evidence he seeks").

### B.   The Eleventh Amendment provides Goertz with immunity.

The Eleventh Amendment bars suit against public officials when "the state is the real, substantial party in interest." *Ford Motor Co. v. Dep't of Treasury of Ind.*, 323 U.S. 459, 464 (1945), *overruled on other grounds by Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 623 (2002). And it bars suit against the State, or a public official where the State is the real

party in interest, regardless of the remedy sought. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100–02 (1984). For these purposes, district attorneys are agents of the State of Texas when acting in a prosecutorial role. *See, e.g.*, *Esteves v. Brock*, 106 F.3d 674, 678 (5th Cir. 1997).

"When the Eleventh Amendment applies, [federal] courts lack subject-matter jurisdiction over the claim." *Bryant v. Tex. Dep't of Aging & Disability*, 781 F.3d 764, 769 (5th Cir. 2015). In order to possess jurisdiction over a claim brought against the State, Eleventh Amendment immunity must be waived or abrogated. *Pennhurst*, 465 U.S. at 99. In either scenario, removal of the protection must be unequivocal. *Id*. Bringing a suit under § 1983 does not accomplish this goal. *Quern v. Jordan*, 440 U.S. 332, 345 (1979).

There are narrow exceptions to Eleventh Amendment immunity. *See Ex parte Young*, 209 U.S. 123, 155–56 (1908). Relevant here, it does not apply where a party "seeks prospective, injunctive relief form a state actor, in her official capacity, based on an alleged ongoing violation of the federal constitution." *K.P. v. LeBlanc*, 729 F.3d 427, 439 (5th Cir. 2013) (*K.P. II*). "That principle, the *Ex Parte Young* rule, 'is based on the legal fiction that a sovereign state cannot [authorize an agent to] act unconstitutionally.'" *Id*. (alteration in original) (quoting *K.P. v. LeBlanc*, 627 F.3d 115, 124 (5th Cir. 2010) (*K.P. I*). But *Ex parte Young* does not apply here because Plaintiff has disclaimed seeking injunctive relief to compel DNA testing or the release of evidence.

Moreover, in order to benefit from the exception in *Ex parte Young*, "a plaintiff must demonstrate that the state officer has 'some connection' with the enforcement of the disputed act. . . . to prevent litigants from misusing the exception." *K.P. I*, 627 F.3d at 124; *accord Air Evac EMS, Inc. v. Tex. Dep't of Ins.*, 851 F.3d 507, 517 (5th Cir. 2017) (holding that availability of *Ex parte Young* requires examination of the connection between the defendant "state actor *and the claimed unconstitutional act*" (emphasis added)). Here, Plaintiff fails the test because only the

CCA has the authority to interpret Chapter 64 and thus, according to Plaintiff's own amended pleading, the CCA committed the alleged unconstitutional act, not Goertz. Eleventh Amendment immunity therefore bars Plaintiff's claims and they must be dismissed for want of jurisdiction.

## III.   Alternatively, Plaintiff Does Not State a Claim upon Which Relief May Be Granted.

### A.   Plaintiff's claims are barred by the applicable statute of limitations.

Claims brought via § 1983 are best characterized as personal injury actions and are therefore subject to a state's personal injury statute of limitations. *See Wilson v. Garcia*, 471 U.S. 261, 279 (1985); *Walker v. Epps*, 550 F.3d 407, 412–14 (5th Cir. 2008). That imitations period is two years in Texas. Tex. Civ. Prac. & Rem. Code § 16.003(a). Claims complaining of the denial of DNA testing accrue on the date when such request was first denied by a state court. *See Savory v. Lyons*, 469 F.3d 667, 673 (7th Cir. 2006).

The trial court first denied Plaintiff's DNA testing motion at the conclusion of a live hearing on November 25, 2014, as Plaintiff admits. Am. Compl. 13–14 ¶¶ 36, 40. The trial court memorialized the reasoning behind its denial on December 12, 2014, and those findings were filed on December 16, 2014, as Plaintiff again admits. Am. Compl. 13–14 ¶ 40; *see also* Am. Compl. Ex. B, ECF No. 10-1 Even under the most favorable trial court accrual date, Plaintiff is more than two years too late. Alternatively, if the CCA's affirmance of the denial of DNA testing is the appropriate accrual date, that occurred on April 12, 2017. *Reed*, 541 S.W.3d at 760. Thus, Plaintiff's claims are still untimely by several months. Regardless of the accrual date used, Plaintiff's claims are barred by limitations.

### B.   Goertz has absolute immunity from suit.

Again, although Plaintiff asserts that he is suing Goertz only in his official capacity and solely for declaratory relief, Am. Compl. 4 ¶ 8, to the extent that he challenges Goertz's actions as the Criminal District Attorney for Bastrop County, which he has now made clear in his amended

complaint that he does, Goertz is entitled to absolute prosecutorial immunity. *See Esteves*, 106 F.3d at 677. And to that extent, the claim fails as a matter of law and must be dismissed.

### C. Plaintiff's procedural due process Claim fails as a matter of law and must be dismissed as it does not state a claim upon which relief may be granted (Claim One).

Plaintiff claims that Chapter 64 violates due process because the CCA: (1) incorrectly interpreted Chapter 64's chain-of-custody requirement; (2) improperly limited the definition of "exculpatory" in Chapter 64; (3) did not "clarify, acknowledge, or even differentiate between" two sets of supplemental findings entered by the trial court on remand; (4) erroneously found "reasonable delay"; and (5) did not consider evidence outside the trial record. Am. Compl. 24–27.

Convicted individuals have no constitutional right to postconviction DNA testing, but if a state provides such a right, the procedures must satisfy due process. *See Dist. Attorney's Office for the Third Judicial Dist. v. Osborne*, 557 U.S. 52, 69, 72–74 (2009). However, a "criminal defendant proved guilty after a fair trial does not have the same liberty interests as a free man." *Id.* at 68. Thus, a state "has more flexibility in deciding what procedures are needed in the context of postconviction relief." *Id.* at 69. In order to demonstrate constitutional infirmity, a convicted individual must show that the postconviction procedures "are fundamentally inadequate to vindicate the substantive rights provided" such that the procedures "offend[] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Id.* at 69–71. *Osborne* "left slim room for the prisoner to show that the governing state law denies him procedural due process." *Skinner*, 562 U.S. at 525.

At best, Plaintiff "provides many arguments as to why the []CCA was incorrect in its application of Chapter 64," but "there is nothing in the []CCA's opinion that 'offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" *Pruett v. Choate*, 711 F. App'x 203, 206 (5th Cir. 2017) (quoting *Osborne*, 557

U.S. at 69). "Instead, the []CCA carefully considered each of [Plaintiff's] contentions as to Chapter 64; it reviewed the evidence with due diligence, then found that [Plaintiff] was not entitled to . . . relief under Chapter 64." *Id.* at 206–07. Plaintiff's complaints about "the legislative intent behind Chapter 64 boil down to the bare claim that the []CCA misapplied Texas law—but there is nothing so egregious in its application that rises to the level of a due-process violation." *Id.* at 207. Nonetheless, Goertz address Plaintiff's complaints individually.

### 1. Requiring an adequate chain of custody does not violate due process.

In attacking the CCA's chain-of-custody interpretation, Plaintiff is attempting to constitutionalize what is truly a state law matter—a state court's interpretation of a state statute. But a "'mere error of state law,' [the Supreme Court] ha[s] noted, 'is not a denial of due process.'" *Rivera v. Illinois*, 556 U.S. 148, 158 (2009) (quoting *Engle v. Isaac*, 456 U.S. 107, 121 n.21 (1982)). And that is Plaintiff's complaint—that the CCA interpreted Chapter 64's chain-of-custody requirement erroneously. He has not briefed whether due process, in the form of fundamental fairness, has anything to say about a state's postconviction DNA testing scheme vis-à-vis chain of custody, let alone *requiring* states to adopt his interpretation of that requirement lest they have a constitutionally infirm system. At base, he complains of the denial of DNA testing. More is needed to show a violation of due process.[1]

Setting aside Plaintiff's inadequately pled claim, due process permits the states to impose restrictions on postconviction DNA testing, including a chain-of-custody requirement. The federal scheme has one. 18 U.S.C. § 3600(a)(4). Many state schemes do too. *See, e.g.*, Cal. Penal Code § 1405(g)(2); Fla. Stat. § 925.11(f)(2); 42 Pa. Cons. Stat. § 9543.1(d)(1)(ii). There is good reason

---

[1]     This critique is applicable to all elements of Plaintiff's due process claim. For brevity's sake, Goertz asks the Court to consider all of Plaintiff's due process complaints as nothing more than complaints of state law error and inadequately pled.

to have such requirements—it ensures "the identity and *integrity* of physical evidence." 23 C.J.S. Criminal Procedure § 1150 (2019) (emphasis added). The latter goal is clearly the purpose of Chapter 64's chain-of-custody requirement, permitting testing only if the evidence "has not been substituted, tampered with, replaced, or altered in any material respect." Tex. Code Crim. Proc. art. 64.03(a)(1)(A)(ii). There is nothing fundamentally unfair in ensuring evidentiary integrity.

Plaintiff nonetheless suggests that the CCA imposed a "novel" chain-of-custody requirement on him. Am. Compl. 17 ¶ 53. Plaintiff's argument ignores context—he is not trying to introduce a piece of evidence, he is trying to remove biological material from that evidence, test it, and then have a court consider the results in determining whether it would have affected the result of his trial. Maine's highest court appreciates the difference—"[t]he central point of the chain of custody requirement is to assure that the evidence is what it purports to be—that is, related to the crime—and that it has not been contaminated or tampered with such that testing of it will yield unreliable (and therefore irrelevant) results." *Cookson v. State*, 17 A.3d 1208, 1213 (Me. 2011). The CCA understood it too, with Plaintiff's help—"[Plaintiff's] own witnesses conceded that the manner of the trial exhibits' handling contaminated or tampered with the evidence." *Reed*, 541 S.W.3d at 770. Plaintiff's refusal to recognize the difference does not make Chapter 64 fundamentally unfair.

But even if the CCA should have applied the "traditional" chain-of-custody requirement, there is no due process violation. That is because, while normally chain of custody goes to the weight of the evidence, "affirmative evidence of *tampering* or *commingling*" goes to its admissibility. *Dossett v. State*, 216 S.W.3d 7, 17 (Tex. App.—San Antonio 2006, pet ref'd) (emphasis added); *see also* 23 C.J.S. Criminal Procedure § 1150 (2019) ("Whether a proper chain of custody has been established goes to the weight of the evidence rather than its admissibility at

least where the trial court has determined that in reasonable probability, the proffered evidence has

not been changed in any important respect."). Plaintiff's own witnesses admitted that the storage

and handling of the trial exhibits "contaminated or tampered" with them, *Reed*, 541 S.W.3d at 770,

so Plaintiff would fail to meet a "traditional" chain-of-custody requirement if due process requires

context to be ignored at the expense of nuance.

Regardless of insular matters of state law, Justice Alito predicted this very factual scenario

a decade ago, finding that the denial of DNA testing in this situation would not violate due process:

> [M]odern DNA testing is so powerful that it actually increases the risks associated
> with mishandling evidence. STR tests, for example, are so sensitive that they can
> detect DNA transferred from person X to a towel (with which he wipes his face),
> from the towel to Y (who subsequently wipes his face), and from Y's face to a
> murder weapon later wielded by Z (who can use STR technology to blame X for
> the murder). Any test that is sensitive enough to pick up such trace amounts of DNA
> will be able to detect even the lightest, unintentional mishandling of evidence.
>
> . . . .
>
> Then, after conviction, with nothing to lose, the defendant could demand DNA
> testing in the hope that some happy accident—for example, degradation or
> contamination of the evidence—would provide the basis for seeking postconviction
> relief. Denying the opportunity for such an attempt to game the criminal justice
> system should not shock the conscience of the Court.

*Osborne*, 557 U.S. at 82, 85 (Alito, J., concurring). As a matter of law, there is no due process

violation and Plaintiff fails to state a claim for which relief may be granted. Dismissal is in order.

### 2. The CCA's definition of "exculpatory" does not offend fundamental fairness.

The term "exculpatory" is used in Chapter 64's materiality requirement. That is, to obtain

testing, a movant must prove by a preponderance of the evidence that he or she "would not have

been convicted if exculpatory results had been obtained through DNA testing." Tex. Code Crim.

Proc. art. 64.03(a)(2)(A). "A requirement of demonstrating materiality is [a] common" feature in

postconviction DNA testing schemes, *Osborne*, 557 U.S. at 63, and that requirement, that the

evidence "be sufficiently material," is not inconsistent with the 'traditions and conscience of our people' or with 'any recognized principle of fundamental fairness,' *id*. at 70 (quoting *Medina v. California*, 505 U.S. 437, 446, 448 (1992)).

Not satisfied, Plaintiff essentially argues that the CCA should interpret "exculpatory" as a match to a "known offender" or "finding the same unidentified DNA profile on both properly stored items and those which could have been contaminated." Am. Compl. 26 ¶ 82. If the CCA were required to presume a known murderer's DNA was on every piece of evidence, "it makes it hard to imagine a case in which [it] would not grant DNA testing." *State v. Swearingen*, 424 S.W.3d 32, 39 (Tex. Crim. App. 2014). This transforms Plaintiff's claim from process to substance, requiring DNA testing for all items in all cases, but "there is no such substantive due process right." *Osborne*, 557 U.S. at 72. In any event, the CCA largely utilized Plaintiff's proposed definition of "exculpatory," assuming a redundant profile amongst all the non-contaminated items he sought to DNA test, yet found it was not enough to show likely acquittal. *Reed*, 541 S.W.3d at 773–77. This was partly based on the evidence he presented at the Chapter 64 hearing— "[Plaintiff's] experts contradict his argument that touch DNA would prove the perpetrator's identity." *Id*. at 777. Chapter 64's materiality requirement does not violate due process as a matter of law, so Plaintiff fails to plead a claim upon which relief can be granted. It should be dismissed.

### 3. The error—and correction—of an inadvertent signature does not violate due process.

It is hard to understand Plaintiff's complaint on this matter for a variety of reasons. For one, he does not identify a *Chapter 64* element dealing with such matters. Thus, he cannot be said to be challenging Texas's postconviction DNA testing scheme. For another, the trial court identified its mistake and moved to correct it. It certainly cannot be said that due process requires perfection in the postconviction process. *See Green v. Thaler*, 699 F.3d 404, 416 (5th Cir. 2012)

("But despite criticizing the practice [of verbatim adoption of the proposed findings by the prevailing party], the Court has never found it to violate due process."). There was a scrivener's error, it was corrected, and due process does not require any more than that.

It is also hard to understand this complaint because the CCA reviewed the supplemental findings and reversed some of them—those dealing with whether Plaintiff proved there was biological material on the items he sought to test. *Reed*, 541 S.W.3d at 770–73. Thus, Plaintiff's complaint boils down to, again, an argument he was entitled to particular result (here, a certain set of findings). That transforms the procedural into substance, and it dooms the claim as Plaintiff has no such right. *See Osborne*, 557 U.S. at 72. As a matter of law, Plaintiff's complaint about an errant signature fails and it should be dismissed as failing to state a claim.

> ### 4.     Use of time limitations in a postconviction DNA testing scheme does not offend fundamental fairness.

Plaintiff next complains that the CCA erroneously found "unreasonable delay" in his case because it did not account for the particular type of DNA testing he requested. Am. Compl. ¶ 84. The CCA's finding undoubtedly passes constitutional muster.

Chapter 64 requires that a movant prove that the request for DNA testing "is not made to unreasonably delay the execution of sentence or administration of justice." Tex. Code Crim. Proc. art. 64.03(a)(2)(B). The requirement that DNA testing "must have been diligently pursued" is similar to requirements imposed "by federal law and the law of other States, and they are not inconsistent with the 'traditions and conscience of our people' or with 'any recognized principle of fundamental fairness.'" *Osborne*, 557 U.S. at 70 (quoting *Medina*, 505 U.S. at 446, 448). Indeed, the federal counterpart, the "model for how States ought to handle" enactment of postconviction DNA testing schemes, *id*. at 63, presumes untimeliness if the request is made five years after its enactment or three years after conviction, § 3600(a)(10)(B). Here, Plaintiff waited thirteen years

after the enactment of Chapter 64 "and there does not appear to be any factual or legal impediments that prevented [Plaintiff] from availing himself of post-conviction DNA testing earlier." *Reed*, 541 S.W.3d at 779. Plaintiff's dilatoriness supports the denial of DNA testing, it is not a fundamentally unfair requirement or ruling, and it requires dismissal of Plaintiff's due process claim.

### 5.   Due process does not mandate a particular style of materiality review.

In determining materiality of the evidence to be tested, the CCA "does not consider post-trial factual developments. Instead, [it] limit[s] . . . review to whether exculpatory results 'would alter the landscape if added to the mix of evidence that was available at the time of trial.'" *Reed*, 541 S.W.3d at 774 (quoting *Holberg v. State*, 425 S.W.3d 282, 285 (Tex. Crim. App. 2014)). Plaintiff does not provide this Court with an iota of briefing that due process requires a state court to utilize a particular practice, or a particular record, in making a materiality determination.

Although Plaintiff does not clarify what due process requires, it would amount to an unprecedented expansion of constitutional law to adopt any version of Plaintiff's vague due process requirement. By making this argument, at a minimum, Plaintiff suggests that state courts must consider new evidence in determining whether to grant postconviction DNA testing. While he presents *his* evidence as categorical, *see* Am. Compl. 28 ¶ 86 ("relying on trial evidence which has since been recanted,[2] discredited and proven false"), certainly he does not suggest that postconviction DNA testing courts must accept a movant's recitation of fact. Thus, instead of

---

[2]   As to the supposed recantation by the medical examiner who testified at Plaintiff's trial, Dr. Roberto Bayardo, this Court has rejected Plaintiff's characterization of that declaration, Order on Report and Recommendation 12, *Reed v. Thaler*, No. A-02-CV-142-LY (W.D. Tex. Sept. 26, 2012) (Yeakel, J.), ECF No. 177 ("[Plaintiff] dramatically overstates the relevance and import of the declaration."), as has the Fifth Circuit, *Reed v. Stephens*, 739 F.3d 753, 770 (5th Cir. 2014) ("Dr. Bayardo's purported 'disavowal' of his trial testimony also does not contradict much of his original testimony."). Moreover, this Court, Order on Report and Recommendation 3–17, the Fifth Circuit, *Reed*, 739 F.3d at 766–73, and most recently the CCA, *Ex parte Reed*, 2019 WL 2607452, at *2, have all rejected Plaintiff's varying, scattershot, and inconsistent claims of "gateway" innocence. Yet, interestingly, he would have the state courts order DNA testing on a showing that is insufficient to lift even a procedural bar.

making a probabilistic determination based on a judicially noticed trial record, Plaintiff's new evidence requirement would turn a preliminary legal question into a factual one and effectively cause a full-blown retrial every time a convicted person requested postconviction DNA testing.

Due process does not mandate that states provide any postconviction review. *Pennsylvania v. Finley*, 481 U.S. 551, 557 (1987). When a state does, it need not provide an attorney, even in capital cases. *Murray v. Giarratano*, 492 U.S. 1, 10 (1989) (plurality opinion). And due process does not even mandate inmate competence during the postconviction process. *Ryan v. Gonzales*, 568 U.S. 57, 67 (2013). There is simply no precedent to suggest that states must, as a constitutional matter, offer another open-ended factfinding venue when they enact postconviction DNA testing schemes. Direct appeal is generally limited to the record developed at trial even if new evidence arises during the pendency of review. *See, e.g.*, *Trevino v. Thaler*, 569 U.S. 413, 422 (2013). The same is true for federal habeas review. *See, e.g.*, *Cullen v. Pinholster*, 563 U.S. 170, 181–82 (2011). Plaintiff provides no briefing why a state cannot do what the federal courts or government do. Due process does not so mandate. *See Smith v. Phillips*, 455 U.S. 209, 218 (1982) ("It seems to us to follow 'as the night the day' that if in the federal system a post-trial hearing such as that conducted here is sufficient to decide allegations of juror partiality, the Due Process Clause of the Fourteenth Amendment cannot possible require more of a state court system."). This is especially true as Texas provides a venue for Plaintiff to air his "new" evidence via its habeas corpus process—and has done so nine times. It does not have to disrupt its entire postconviction DNA testing scheme to give him one more.

Texas is not alone in limiting the evidence to be considered when performing a materiality review. *See, e.g.*, *Meinhard v. State*, 371 P.3d 37, 44 (Utah 2016) ("And other provisions of the code make clear that only DNA test results can establish factual innocence under Part 3 of the

PCRA."); *Anderson v. State*, 831 A.2d 858, 867 (Del. 2003) ("When deciding whether evidence is materially relevant, the trial court must consider not only the exculpatory potential of a favorable DNA test result, but also the other evidence presented at trial."). Of note, *Osborne* overturned a Ninth Circuit critique of the Alaska Supreme Court's materiality review that "focus[ed] only on the state of the evidence as it existed at trial and whether that trial record would lead one to question the integrity of that evidence." *Dist. Attorney's Office for the Third Judicial Dist. v. Osborne*, 521 F.3d 1118, 1135 (9th Cir. 2008). And focusing on the effect of trial is a well-worn rule in other constitutional materiality contexts. *See, e.g.*, *United States v. Bagley*, 473 U.S. 667, 681–82 (1985); *Strickland v. Washington*, 466 U.S. 668, 695–96 (1984). Use of such a materiality review standard in a postconviction DNA testing scheme is not fundamentally unfair. *See Osborne*, 557 U.S. at 70. Relief cannot be had as a matter of law and the claim should be dismissed.

>  **6.      Plaintiff cannot show a due process violation based upon requests he has not made under Chapter 64.**

Plaintiff sets out the evidence that he wanted DNA tested. Compl. Ex. A. Relevant here, he wanted testing of "[s]trands of hair taken from Stites's body" and "extracted DNA from hair #20." *Id*. But Plaintiff cannot show fundamental unfairness for these items because he did not request that they be tested under Chapter 64. As to these items, they were part of a DNA testing agreement entered into by Plaintiff and the State. *See Reed*, 541 S.W.3d at 765. As such, Plaintiff cannot demonstrate he was denied due process of law for items he has never attempted to test via Chapter 64. *See Osborne*, 557 U.S. at 71 ("These procedures are adequate on their face, and without trying them, [Plaintiff] can hardly complain they do not work in practice.").

>  **D.      Relief cannot be granted because Plaintiff's access-to-the-courts claim fails as a matter of law, so it must be dismissed (Claim Two).**

While a state inmate has a "right of access to the courts," that right does not encompass the ability "to *discover* grievances, and to *litigate effectively* once in court." *Lewis v. Casey*, 518 U.S.

343, 350, 354 (1996) (emphasis removed from initial quotation). "One is not entitled to access to the courts merely to argue that there might be some remote possibility of some constitutional violation." *Whitaker v. Collier*, 862 F.3d 490, 501 (5th Cir. 2017) (quoting *Whitaker v. Livingston*, 732 F.3d 465, 467 (5th Cir. 2013)). If a litigant has "not met the pleadings standards for . . . their claims, their access-to-the-courts theory necessarily fails as well." *Id*. Because Plaintiff's due process claim fails, his access-to-the-courts claims does too. *See id*; *Alvarez*, 679 F.3d at 1265–66 (same as applied to a postconviction DNA testing challenge). It must therefore be dismissed.

### E. As a matter of law, Plaintiff has suffered no Eighth Amendment deprivation, so this claim must be dismissed (Claim Three).

The Eighth Amendment applies primarily to "the trial stage of capital offense adjudication, where the court and jury hear testimony, receive evidence, and decide the questions of guilt and punishment." *Giarratano*, 492 U.S. at 9 (plurality opinion). It does not apply to postconviction procedures. *See id*. at 9–10.[3] And it does not create a claim upon which relief can be granted as applied to postconviction DNA testing schemes. *See Alvarez*, 679 F.3d at 1265 ("We can discern no conceivable basis in this case, nor has Alvarez provided us with one, for attempting an end-run around the *Osborne* holding under the cloak of the Sixth or Eighth Amendments."). And because Plaintiff argues that the Eighth Amendment prohibits his execution, it is a challenge to his sentence and is barred from a § 1983 suit under *Heck v. Humphrey*, 512 U.S. 477 (1994). *See In re Pruett*, 784 F.3d 287, 290–91 (5th Cir. 2015). The claim fails as a matter of law and it must be dismissed.

---

[3] Although the Eighth Amendment prevents the execution of an incompetent individual, it does not "impose[] heightened procedural requirements" to determine competence. *Giarratano*, 492 U.S. at 10 (plurality opinion) (quoting *Ford v. Wainwright*, 477 U.S. 399, 425 (1986) (Powell, J., concurring)).

**F.** **Plaintiff's actual-innocence claim must be dismissed because it fails as a matter of law (Claim Four).**

To the extent that this is a substantive due process claim, *Osborne* forecloses relief. *See Skinner*, 562 U.S. at 525 ("*Osborne* rejected the extension of substantive due process to this area."); *Alvarez*, 679 F.3d at 1264. If this is an actual innocence "claim," that "would be brought in habeas." *Osborne*, 557 U.S. at 72. And thus it is "not cognizable under § 1983" and therefore *Heck* barred. *Emerson v. Thaler*, 544 F. App'x 325, 327 n.1 (5th Cir. 2013). Regardless, "*Osborne* foreclosed *Herrera*-based actual innocence claims of the sort made here." *Alvarez*, 679 F.3d at 1265. Relief must be denied as a matter of law, so the claim must be dismissed.[4]

**G.** **The Court should not exercise pendant jurisdiction over Plaintiff's Texas Constitution claim, which has to be dismissed in any event because it cannot succeed as a matter of law (Claim Five).**

Finally, Plaintiff claims that the above supposed constitutional violations also violate their state law analogues in the Texas Constitution. Am. Compl. 32. The "general rule" in the Fifth Circuit "is to dismiss state claims when the federal claims to which they are pendant are dismissed." *Enochs v. Lampasas Cty.*, 641 F.3d 155, 161 (5th Cir. 2011) (quoting *Parker & Parsley Petroleum Co. v. Dresser Indus.*, 972 F.2d 580, 585 (5th Cir. 1992)). Because the Court does not possess jurisdiction over Plaintiff's other claims, and they do not otherwise state claims for relief, the Court should dismiss Plaintiff's Texas Constitution claim too.

---

[4]     Plaintiff accuses the State of "secretly conduct[ing] DNA tests (without any input from Mr. Reed) on evidence previously tested years ago." Am. Compl. 31 ¶ 97. How that is relevant to Plaintiff's actual innocence claim is uncertain, but it is also not correct. On November 18, 2015, one of Plaintiff's counsel wrote the Texas Department of Public Safety "formally request[ing] that the DPS Crime Lab review the work done in Mr. Reed's case and correct any errors that the DPS Crime Lab discovers." Letter from Bryce Benjet to Brady Mills, Deputy Assistant Director, Tex. Dep't of Pub. Safety (Nov. 18, 2015) (on file with the CCA). The supplemental DNA laboratory report of September 26, 2019, Am. Compl. Ex. L, ECF No. 10-1, is a result of Plaintiff's request, i.e., his "input," and it was not new testing but a re-examination of a prior result interpretation.

In any event, Plaintiff's Texas Constitution claim fails as a matter of law. Initially, Plaintiff fails to argue that the Texas Constitution affords him any more rights than the Federal Constitution. Setting that aside, Texas's due-course-of-law guarantee "is nearly identical to the Fourteenth Amendment's due-process clause" and they are "without meaningful distinction," so Texas courts "have traditionally followed contemporary federal due process interpretations of procedural due process issues." *Mosley v. Tex. Health & Human Servs. Comm'n*, No. 17-0345, 2019 WL 1977062, at *9 (Tex. May 3, 2019). The same is true concerning cruel and unusual punishments. *See Cantu v. State*, 939 S.W.2d 627, 645 (Tex. Crim. App. 1997) ("[W]e have previously held to the contrary, finding no significance in the difference between the Eight Amendment's "cruel and unusual" phrasing and the "cruel *or* unusual" phrasing . . . [in] the Texas Constitution."). So, because Plaintiff fails to make out a due process or Eighth Amendment claim, he fails to make out a due course or cruel-or-unusual claim. It is similar with Texas's open courts provision. To make out such a claim, a plaintiff must show "(1) a cognizable, common-law claim that is statutorily restricted, and (2) the restriction is unreasonable or arbitrary when balanced against the statute's purpose and basis." *Yancy v. United Surgical Partners Int'l, Inc.*, 236 S.W.3d 778, 783 (Tex. 2007). Plaintiff fails to meet either prong. *See Curry v. State*, 186 S.W.3d 39, 43 (Tex. App.— Houston [1st Dist.] 2005) (Hanks, J.). Should the Court exercise pendant jurisdiction over this claim, it fails as a matter of law and must be dismissed.

## CONCLUSION

For the foregoing reasons, the Court either does not possess jurisdiction or it must dismiss Plaintiff's claims as ones upon which relief may not be granted.

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

MARK PENLEY
Deputy Attorney General
For Criminal Justice

EDWARD L. MARSHALL
Chief, Criminal Appeals Division

/s/ Matthew Ottoway
MATTHEW OTTOWAY
Assistant Attorney General
State Bar No. 24047707
*Counsel of Record*

Post Office Box 12548, Capitol Station
Austin, Texas 78711
Tel.: (512) 936-1400
Fax: (512) 320-8132
Email: *matthew.ottoway@oag.texas.gov*

*Counsel for Defendant Goertz*

## CERTIFICATE OF COMPLIANCE

I do herby certify that this document complies with Local Court Rule CV-10 and *In re: Filing of Documents in the Austin Division* in that the document utilizes 12-point font, is double spaced, has one-inch margins, and contains all required attorney information.

/s/ Matthew Ottoway
MATTHEW OTTOWAY
Assistant Attorney General

21

**CERTIFICATE OF SERVICE**

I do herby certify that on October 15, 2019, I electronically filed the foregoing document with the Clerk of the Court for the U.S. District Court, Western District of Texas, using the electronic case-filing system of the Court. The electronic case-filing system sent a "Notice of Electronic Filing" (NEF) to the following counsel of record, who consented in writing to accept the NEF as service of this document by electronic means:

Bryce Benjet                                    Andrew F. MacRae
THE INNOCENCE PROJECT               LEVATINO | PACE PLLC
40 Worth Street, Suite 701              1101 S. Capital of Texas Hwy., Building K, Ste. 125
New York, New York, 10013             Austin, Texas 78746
bbenjet@innocenceproject.org        amacrae@levatinopace.com

                                        /s/ Matthew Ottoway
                                    MATTHEW OTTOWAY
                                    Assistant Attorney General