IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| RODNEY REED,<br>   *Plaintiff*,<br><br>v.<br><br>BRYAN GOERTZ, Criminal District<br>Attorney, Bastrop County, Texas<br>   *Defendant*. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | ACTION NO. 1:19-CV-794-LY<br>**CAPITAL CASE** |

---

### DEFENDANT GOERTZ'S
### RESPONSE IN OPPOSITION TO MOTION TO STAY EXECUTION

---

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

MARK PENLEY
Deputy Attorney General
For Criminal Justice

EDWARD L. MARSHALL
Chief, Criminal Appeals Division

MATTHEW OTTOWAY
Assistant Attorney General
State Bar No. 24047707
 *Counsel of Record*

Post Office Box 12548, Capitol Station
Austin, Texas 78711
Tel.: (512) 936-1400
Fax: (512) 320-8132
Email: *matthew.ottoway@oag.texas.gov*

*Counsel for Defendant Goertz*

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................................. i
TABLE OF AUTHORITIES ..................................................................................................... ii
INTRODUCTION ....................................................................................................................... 1
RESPONSE IN OPPOSITION ................................................................................................... 1
    I.     The Standard Governing Stays ....................................................................................... 1
    II.    Plaintiff Fails to Demonstrate a Strong Showing of Likely Success on the Merits ............. 2
    III.   Plaintiff Fails to Prove Irreparable Injury ........................................................................ 5
    IV.   The Equities Favor the State ........................................................................................... 6
    V.    Plaintiff Has Failed to Exercise Due Diligence ............................................................... 7
CONCLUSION ............................................................................................................................ 8
CERTIFICATE OF COMPLIANCE ........................................................................................ 9
CERTIFICATE OF SERVICE .................................................................................................. 9

# TABLE OF AUTHORITIES

**Cases**

*Dist. Attorney's Office for the Third Judicial Dist. v. Osborne*, 557 U.S. 52 (2009) ................. 4, 5

*Ex parte Reed*, Nos. WR-50,961-04 to -05, 2009 WL 97260
 (Tex. Crim. App. Jan. 14, 2009) ........................................................................................ 7

*Ex parte Reed*, Nos. WR-50,961-08 to -09, 2019 WL 2607452
 (Tex. Crim. App. June 26, 2019) ....................................................................................... 6

*Gomez v. U.S. Dist. Court for N. Dist. of Cal.*, 503 U.S. 653 (1992) ............................................ 8

*Heck v. Humphrey*, 512 U.S. 477 (1994) .................................................................................. 5

*Hill v. McDonough*, 547 U.S. 573 (2006) ........................................................................ 1, 2, 6, 7

*In re Pruett*, 784 F.3d 287 (5th Cir. 2015) ................................................................................. 5

*Lewis v. Casey*, 518 U.S. 343 (1996) ......................................................................................... 4

*Martel v. Clair*, 565 U.S. 648 (2012) ......................................................................................... 7

*Moore v. Texas*, 137 S. Ct. 1039 (2017) .................................................................................... 3

*Murphy v. Collier*, 919 F.3d 913 (5th Cir. 2019) ....................................................................... 7

*Nelson v. Campbell*, 541 U.S. 637 (2004) .............................................................................. 2, 7

*Nken v. Holder*, 556 U.S. 418 (2009) ..................................................................................... 1, 2

*Reed v. State*, 541 S.W.3d 759 (Tex. Crim. App. 2017) ......................................................... 4, 7

*Reed v. Stephens*, 739 F.3d 753 (5th Cir. 2014) ..................................................................... 6, 7

*Rouse v. Lee*, 339 F.3d 239 (4th Cir. 2003) ............................................................................... 5

*Ryland v. Shapiro*, 708 F.2d 967 (5th Cir. 1983) ...................................................................... 5

*Wood v. Collier*, 836 F.3d 534 (5th Cir. 2016) .......................................................................... 5

**Statutes**

42 U.S.C. § 1983 .............................................................................................................. 1, 5, 8

Tex. Code Crim. Proc. art. 64.01(a)(1) ....................................................................................... 3

## INTRODUCTION

This is civil-rights action filed pursuant to 42 U.S.C. § 1983. Plaintiff is a Texas death row inmate scheduled to be executed November 20, 2019. He purports to challenge Texas's postconviction DNA testing scheme, Chapter 64 of the Texas Code of Criminal Procedure, on August 8, 2019. *See generally* Am. Compl., ECF No. 10. Ostensibly predicated on this suit, Plaintiff seeks to stay his execution. Mot. Stay Execution, ECF No. 11. Defendant Bryan Goertz, the Criminal District Attorney of Bastrop County, Texas respectfully opposes Plaintiff's request for stay of execution.

## RESPONSE IN OPPOSITION

### I. The Standard Governing Stays

A stay of execution is an equitable remedy and "[i]t is not available as a matter of right." *Hill v. McDonough*, 547 U.S. 573, 584 (2006). A "party requesting a stay bears the burden of showing that the circumstances justify an exercise of [judicial] discretion." *Nken v. Holder*, 556 U.S. 418, 433–34 (2009). In utilizing that discretion, a court must consider:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Id*. at 434 (citations omitted) (internal quotation marks omitted). "The first two factors of the traditional standard are the most critical. It is not enough that the chance of success on the merits be better than negligible." *Id*. If the movant "satisfies the first two factors, the traditional stay inquiry calls for assessing the harm to the opposing party and weighing the public interest." *Id*. at 435. "These factors merge when the [State] is the opposing party" and "courts must be mindful that the [State's] role as the respondent in every . . . proceeding does not make the public interest in each individual one negligible." *Id*.

"Both the State and the victims of crimes have an important interest in the timely enforcement of a sentence" and courts "must be sensitive to the State's strong interest in enforcing its criminal judgments without undue interference from the federal courts." *Hill*, 547 U.S. at 584. Thus, "[a] court considering a stay must also apply 'a strong equitable presumption against the grant of a stay where a claim could have been brought at such a time as to allow consideration of the merits without requiring entry of a stay.'" *Id.* (quoting *Nelson v. Campbell*, 541 U.S. 637, 650 (2004)). Indeed, "[t]he federal courts can and should protect States from dilatory or speculative suits." *Id.* at 585.

## II. Plaintiff Fails to Demonstrate a Strong Showing of Likely Success on the Merits.

Plaintiff argues that he has made the requisite strong showing of likely success on the merits because the Court of Criminal Appeals (CCA) improperly construed the chain-of-custody requirement in Texas's postconviction DNA testing scheme, it erroneously found him dilatory, and it did not consider evidence outside the trial record. *See* Mot. Stay Execution 7–9. He also argues that the CCA's construction of Chapter 64—though he does not specify which interpretation, other than to complain of the denial of DNA testing—denies him access to the courts and violates the Eighth Amendment. *Id.* at 9–10.

Goertz has addressed these matters in his amended motion to dismiss. Briefly, the Court does not possess jurisdiction for two reasons. First, Plaintiff is attacking a state court's opinion rather than attacking a state's postconviction DNA testing scheme, thus running afoul of the *Rooker–Feldman* doctrine. Am. Mot. Dismiss 5–6, ECF No. 22. And, second, the Eleventh Amendment provides the only remaining defendant with immunity, thereby stripping subject matter jurisdiction from the Court, because Plaintiff no longer seeks injunctive relief and Goertz does not control the CCA's construction of Chapter 64. *Id.* at 6–8. If the Court cannot reach the merits of Plaintiff's claims, he necessarily cannot demonstrate that relief on them is likely.

If the Court turns to Plaintiff's claims, however, he still fails in making a strong showing sufficient to trigger a stay of execution—likely relief. First, his claims are time-barred. Am. Mot. Dismiss 8. Plaintiff waited nearly five years from the trial court's denial of DNA testing, and more than two years from the CCA's affirmance of that decision. *Id*. Because his claims are time-barred, Plaintiff cannot demonstrate likely relief, strong or otherwise.

Second, Plaintiff's due process claims are meritless such that summary dismissal is warranted. There is nothing fundamentally unfair in requiring an adequate chain of custody as a predicate for DNA testing. Am. Mot. Dismiss 10–12. Vis-à-vis chain of custody, Plaintiff still elides the difference between admissibility of the underlying item and whether biological material should be removed from that item and subjected to DNA testing. *Id*. at 11. Calling the CCA's contextually appropriate interpretation of chain of custody—based in part on his own argument and evidence—a "similar practice" to using outdated medical norms in the intellectual disability realm, Mot. Stay Execution 7 (citing *Moore v. Texas*, 137 S. Ct. 1039, 1042, 1052 (2017)), is legal hyperbole and proves that Plaintiff still does not understand context.

Plaintiff's second chain-of-custody argument, which is not included in his amended complaint, fares no better. He thinks it unfair that there is a chain-of-custody requirement regarding evidence held by the state. Mot. Stay Execution 7–8. But that is tantamount to saying that a state cannot impose a chain-of-custody requirement because, necessarily, the state must possess the evidence a movant seeks to test. *See* Tex. Code Crim. Proc. art. 64.01(a)(1) ("an item that is in possession of the state"). And that means a state would have to test contaminated evidence, as Plaintiff's witnesses conceded, under his theory. *See Reed v. State*, 541 S.W.3d 759, 770 (Tex. Crim. App. 2017). But the Constitution does not so require. *See Dist. Attorney's Office for the Third Judicial Dist. v. Osborne*, 557 U.S. 52, 82, 85 (2009) (Alito, J., concurring).

There is also nothing unconstitutional with applying a time limitation to a request for DNA testing, Am. Mot. Dismiss 14–15, something Plaintiff equates to an "improper laches analysis," Mot. Stay Execution 8. Plaintiff's suggestion that he sought testing only after amendment of Chapter 64 is belied by the record in multiple ways. For one, Plaintiff sought "modern" DNA testing only after the Fifth Circuit "denied his request for a certificate of appealability approximately three days before." *Reed*, 541 S.W.3d at 779. For another, Plaintiff only filed his Chapter 64 motion on the day the state trial court held a hearing on the State's motion to set an execution date. *See id*. In addition, the amendment Plaintiff references became effective about three years before he sought "modern" DNA testing, meaning Chapter 64's prior iteration was clearly not the impediment preventing Plaintiff from filing for DNA testing. *See id*. Moreover, with sufficient proof, such DNA testing was available before the 2011 amendment, it just was not statutorily defined. *See id*. And Plaintiff's complaint that the CCA's interpretation of timeliness is inconsistent with the Texas Legislature's intent, Mot. Stay Execution 8–9, is simply not an issue to be decided by a federal court, nor does it implicate the federal Constitution.

Further, Plaintiff does not have a viable access-to-courts claim. Am. Mot. Dismiss 17–18. The Supreme Court has noted the limitation on such claims—the right does not encompass the ability "to *discover* grievances, and to *litigate effectively* once in court." *Lewis v. Casey*, 518 U.S. 343, 354 (1996). And the case Plaintiff relies on to rebut such a clear statement by the Court was decided more than a decade earlier by a court of appeals and thus has no force given the High Court's later decision. Mot. Stay Execution 9 (citing *Ryland v. Shapiro*, 708 F.2d 967, 971–76 (5th Cir. 1983)). And, if Plaintiff maintains his characterization of the denial of DNA testing by a court as "state actors imped[ing] a potential litigant's access to evidence," Mot. Stay Execution 9, then he is pleading himself into dismissal of his due process claim because he does not challenge the

constitutionality of Chapter 64 but is instead complaining about a state court decision, Am. Mot. Dismiss 5–6, and he has not sued the members of the judiciary who denied him DNA testing.

The same absence of viability applies to Plaintiff's Eighth Amendment claim. Am. Mot. Dismiss 18. That amendment applies primarily to trial, not to postconviction procedures. *Id.*; *see Rouse v. Lee*, 339 F.3d 239, 254–55 (4th Cir. 2003) (en banc) ("[T]he Supreme Court has repeatedly declined to treat death differently in the post-conviction context."). And such a claim sounds in habeas, not § 1983, so *Heck v. Humphrey*, 512 U.S. 477 (1994), prevents relief from being granted. *See In re Pruett*, 784 F.3d 287, 290–91 (5th Cir. 2015). Because all of Plaintiff's claims are subject to dismissal on the pleadings, assuming that the jurisdictional deficits could be overcome, Plaintiff fails to make a strong showing of likely relief.

## III. Plaintiff Fails to Prove Irreparable Injury.

Plaintiff argues that his death via lethal injection is irreparable. Mot. Stay Execution 10. That is true, but that is not the focus of Plaintiff's lawsuit, so there is no nexus between his claimed harm and the remedy he seeks in this Court. If he has not forfeited an argument on harm by failing to properly brief it, Plaintiff could only complain that he has not received DNA testing on every piece of evidence collected in his case. But he has no constitutional right to this testing, so he has no constitutional deprivation. *See Osborne*, 557 U.S. at 72. In other words, he has no claim of harm. *Cf. Wood v. Collier*, 836 F.3d 534, 542 (5th Cir. 2016) (holding that plaintiffs in a method-of-execution case did not prove irreparable injury because they did not prove they would suffer unnecessary pain, the basis of their complaint). And, indeed, Plaintiff has fully abandoned a request for injunctive relief for DNA testing or release of evidence for such testing, meaning he is not trying to remedy this supposed harm. As such, this factor does not fall in his favor.

## IV. The Equities Favor the State.

As noted above, "[b]oth the State and the victims of crimes have an important interest in the timely enforcement of a sentence." *Hill*, 547 U.S. at 584. Reed was found guilty of capital murder for the abduction, rape, and strangulation death of Stacey Stites. *See, e.g.*, *Reed v. Stephens*, 739 F.3d 753, 761–62 (5th Cir. 2014). Since that brutal murder, Reed has litigated his conviction and sentence for twenty-one years, two years longer than Stites was alive. And despite this incessant onslaught on his conviction, no court has provided him relief, including on his actual innocence claims. *See, e.g.*, *Ex parte Reed*, Nos. WR-50,961-08 to -09, 2019 WL 2607452, at *1–3 (Tex. Crim. App. June 26, 2019). Indeed, there has not even been a dissent on the merits during this multi-decade attack, including the most recent state habeas denial of his procedural innocence "claim," in which most of his "new" evidence was presented. *Id*. And most of Plaintiff's stay argument is irrelevant to the claims before the Court—whether Chapter 64 comports with fundamental fairness, not a freestanding claim of actual innocence, which is only thinly veiled in Plaintiff's pleadings. *See, e.g.*, Mot. Stay Execution 2–3. This Court's habeas jurisdiction ended when it entered final judgment and it should not entertain a disguised collateral attack on its decision via a stay of execution. And because that postconviction DNA testing[1] scheme is constitutional, the Court should not impede the execution of a lawful state-court sentence. *See*

---

[1] Plaintiff asserts that the State "continues to work with DNA experts at Texas DPS to obtain new results on previously tested material." Mot. Stay Execution 10. How that is relevant to Plaintiff's argument about the equities is uncertain, but it is also not correct. On November 18, 2015, one of Plaintiff's counsel wrote the Texas Department of Public Safety "formally request[ing] that the DPS Crime Lab review the work done in Mr. Reed's case and correct any errors that the DPS Crime Lab discovers." Letter from Bryce Benjet to Brady Mills, Deputy Assistant Director, Tex. Dep't of Pub. Safety (Nov. 18, 2015) (on file with the CCA). The supplemental DNA laboratory report of September 26, 2019, Am. Compl. Ex. L, is a result of Plaintiff's request, i.e., his "input," and it was not new testing but a re-examination of a prior result interpretation.

*Martel v. Clair*, 565 U.S. 648, 662 (2012) ("Protecting against abusive delay *is* an interest of justice.").

## V. Plaintiff Has Failed to Exercise Due Diligence.

As also noted above, "[a] court considering a stay must also apply 'a strong equitable presumption against the grant of a stay where a claim could have been brought at such a time as to allow consideration of the merits without requiring entry of a stay.'" *Hill*, 547 U.S. at 584 (quoting *Nelson*, 541 U.S. at 650). Plaintiff has never acted with diligence and he continues this pattern and practice repeatedly recognized by the courts, including this one.

A *decade* ago, the CCA recognized Plaintiff's dilatory litigation tactics, calling them "piecemeal." *Ex parte Reed*, Nos. WR-50,961-04 to -05, 2009 WL 97260, at *1 (Tex. Crim. App. Jan. 14, 2009). And this Court too has found Plaintiff untimely. Order on Report and Recommendation 11, 13, *Reed v. Thaler*, No. A0-02-CV-142-LY (W.D. Tex. Sept. 26, 2012), ECF No. 177 ("[Plaintiff's] motion is untimely. . . . The timing and content of Bayardo's affidavit is extremely suspect."). So has the Fifth Circuit. *Reed*, 739 F.3d at 768 n.5 ("[Plaintiff] has provided no persuasive reason for waiting well over a decade to revisit Dr. Bayardo's testimony."). And the CCA has once again. *Reed*, 541 S.W.3d at 779 ("We therefore find no legally unavailable claim or legal impediment preventing [Plaintiff] from seeking Chapter 64 testing at a much earlier time."). This history of dilatory litigation bears on whether a stay should be granted. *See Murphy v. Collier*, 919 F.3d 913, 916 (5th Cir. 2019) ("This court also takes note, as did the district court, of the multiple warnings that Murphy's counsel has received in the past for filing last-minute motions."). And this dilatory history, by itself, compels that any stay be denied.

But there is more—Plaintiff's dilatory actions continue in this litigation. For one, Plaintiff comes before this Court with time-barred claims. Am. Mot. Dismiss 8. Plaintiff could have brought this suit anytime within nearly the past five years. *Id*. But he did not do that, waiting until only

after an execution date was set. *Compare* Execution Order, *State v. Reed*, No. 8701 (21st Dist. Ct., Bastrop County, Tex. July 24, 2019), *with* Compl., ECF No. 1 (filed August 8, 2019). And, even then, Plaintiff waited nearly a month before attempting to serve the suit on defendants. *See, e.g.*, Proof of Service, ECF No. 4. And what is more, Plaintiff waited nearly two months to amend his complaint, primarily to drop several defendants and a request for injunctive relief. But he should have known that he sued several improper defendants and requested inappropriate injunctive relief as one of his attorneys filed a nearly identical suit about three years ago, Complaint Filed Pursuant to 42 U.S.C. § 1983, *Swearingen v. Keller*, No. A-16-CV-1181-YL (W.D. Tex. Oct. 28, 2016), ECF No. 1, and this Court dismissed it, Order Dismissing Complaint, *Swearingen v. Keller*, No. A-16-CV-1181-YL (W.D. Tex. July 7, 2017), ECF No. 18. Indeed, the *Swearingen* litigation proves that one of Plaintiff's counsel knows how to challenge Chapter 64 via § 1983 outside the impendency of an execution date. There can be only one conclusion drawn from Plaintiff's dilatory litigation history and present laggard actions—this suit is for delay and nothing more. Ultimately, this suit "could have been brought [long] ago" and "[t]here is no good reason for this abusive delay." *Gomez v. U.S. Dist. Court for N. Dist. of Cal.*, 503 U.S. 653, 654 (1992) (per curiam). A stay of execution should be denied.

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiff's request to stay his execution.

    Respectfully submitted,

    KEN PAXTON
    Attorney General of Texas

    JEFFREY C. MATEER
    First Assistant Attorney General

    MARK PENLEY
    Deputy Attorney General
    For Criminal Justice

EDWARD L. MARSHALL
Chief, Criminal Appeals Division

/s/ Matthew Ottoway
MATTHEW OTTOWAY
Assistant Attorney General
State Bar No. 24047707
*Counsel of Record*

Post Office Box 12548, Capitol Station
Austin, Texas 78711
Tel.: (512) 936-1400
Fax: (512) 320-8132
Email: *matthew.ottoway@oag.texas.gov*

*Counsel for Defendant Goertz*

**CERTIFICATE OF COMPLIANCE**

I do herby certify that this document complies with Local Court Rule CV-10 and *In re: Filing of Documents in the Austin Division* in that the document utilizes 12-point font, is double spaced, has one-inch margins, and contains all required attorney information.

/s/ Matthew Ottoway
MATTHEW OTTOWAY
Assistant Attorney General

**CERTIFICATE OF SERVICE**

I do herby certify that on October 15, 2019, I electronically filed the foregoing document with the Clerk of the Court for the U.S. District Court, Western District of Texas, using the electronic case-filing system of the Court. The electronic case-filing system sent a "Notice of Electronic Filing" (NEF) to the following counsel of record, who consented in writing to accept the NEF as service of this document by electronic means:

| | |
|---|---|
| Bryce Benjet | Andrew F. MacRae |
| THE INNOCENCE PROJECT | LEVATINO \| PACE PLLC |
| 40 Worth Street, Suite 701 | 1101 S. Capital of Texas Hwy., Building K, Ste. 125 |
| New York, New York, 10013 | Austin, Texas 78746 |
| bbenjet@innocenceproject.org | amacrae@levatinopace.com |

/s/ Matthew Ottoway
MATTHEW OTTOWAY
Assistant Attorney General