IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| RODNEY REED, | § | **Civil Case No. 1:19-cv-794** |
| | § | |
| Plaintiff, | § | **CAPITAL CASE** |
| | § | |
| v. | § | **ORAL ARGUMENT** |
| | § | **REQUESTED** |
| BRYAN GOERTZ, Bastrop County District Attorney, | § | |
| in his official capacity only, | § | |
| | § | |
| Defendant. | § | |

**PLAINTIFF'S OPPOSITION TO DEFENDANT GOERTZ'S AMENDED MOTION
TO DISMISS FOR WANT OF JURISDICTION AND FAILURE TO
<u>STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED</u>**

Cliff C. Gardner (admitted *pro hac vice*)
Robert A. Weber (admitted *pro hac vice*)
Nicole A. DiSalvo (admitted *pro hac vice*)
Shaivlini Khemka (admitted *pro hac vice*)
**SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP**
One Rodney Square
P.O. Box 636
Wilmington, Delaware  19899-0636
(302) 651-3000

*Of Counsel*

Bryce Benjet
**THE INNOCENCE PROJECT**
40 Worth Street, Suite 701
New York, New York 10013
(212) 364-5980
bbenjet@innocenceproject.org

Andrew F. MacRae
**LEVATINO PACE PLLC**
1101 S. Capital of Texas Highway
Building K, Suite 125
Austin, Texas 78746
(512) 637-8565
amacrae@levatinopace.com
*Attorneys for Plaintiff Rodney Reed*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................................... ii

INTRODUCTION ...................................................................................................... 1

FACTUAL BACKGROUND ...................................................................................... 2

ARGUMENT ............................................................................................................. 3

I.      CONTROLLING SUPREME COURT AUTHORITY MAKES CLEAR THAT
        *ROOKER-FELDMAN* DOES NOT STRIP THE COURT OF JURISDICTION. ............... 3

II.     GOERTZ IS NOT IMMUNE FROM SUIT. .................................................... 4

III.    REED'S CLAIMS ARE TIMELY. ................................................................ 6

IV.     REED STATES A CLAIM FOR RELIEF. ...................................................... 8

        A.      Reed States A Claim For Denial Of Procedural Due Process (Count I)................ 8

                1.      Reed's Procedural Due Process Chain Of Custody
                        Claim Is Well-Pled................................................................. 9

                2.      Reed's Due Process Exculpatory Results Claim Is
                        Well-Pled. ............................................................................ 12

                3.      Reed's Procedural Due Process Article 64 Findings
                        Claim Is Well-Pled................................................................ 14

                4.      Reed Did Not Unreasonably Delay In Seeking Touch
                        DNA Testing. ....................................................................... 15

                5.      Reed Adequately Pleads A Procedural Due Process
                        Claim Regarding Article 64's Reliance On Recanted
                        Expert Trial Testimony. ......................................................... 15

        B.      Reed States A Right To Access The Courts Claim (Count II). ........................... 17

        C.      Reed States A Claim For Violation Of The Eighth Amendment (Count III) ........ 19

        D.      Reed States A Claim For Violations Of The Texas Constitution (Count IV) ....... 19

CONCLUSION ......................................................................................................... 20

# TABLE OF AUTHORITIES

**CASES**                                                                                      **PAGE(S)**

*Air Evac EMS, Inc. v. Texas Dep't of Ins. Div. of Workers Comp.*,
    851 F.3d 507 (5th Cir. 2017) ............................................................................. 5

*Anderson v. State*,
    31 A.2d 858 (Del. 2003) ................................................................................. 17

*Ass'n of Am. Physicians & Surgeons, Inc. v. Tex. Med. Bd.*,
    No. A-08-CV-675-LY, 2011 WL 13273839 (W.D. Tex. July 27, 2011) ......................... 5

*Bounds v. Smith*,
    30 U.S. 817 (1977) ...................................................................................... 17

*Boyd v. Kallam*,
    152 S.W.3d 670 (Tex. App. 2004) .................................................................... 19

*Breitling v. LNV Corp.*,
    716 Fed. App'x 338 (5th Cir. 2018) ............................................................ 12, 13

*Chambers v. Mississippi*,
    410 U.S. 284 (1973) ..................................................................................... 13

*In re Davis*,
    557 U.S. 952 (2009) ..................................................................................... 19

*Dist. Attorney's Office for Third Judicial Dist. v. Osborne*,
    557 U.S. 52 (2009) ............................................................................... 8, 17, 18

*Elam v. Lykos*,
    470 Fed. App'x 275 (5th Cir. 2012) .................................................................... 6

*Ex parte Gandy*,
    No. WR-22,074-10, 2019 WL 2017291 (Tex. Crim. App. May 8, 2019) ..................... 16

*Ex parte Tiede*,
    448 S.W.3d 456 (Tex. Crim. App. 2014) ............................................................ 16

*Ex parte Young*,
    209 U.S. 123 (1908) ....................................................................................... 4

*Hall v. Louisiana*,
    983 F. Supp. 2d 820 (M.D. La. 2013) ................................................................. 5

*Holmes v. South Carolina*,
    547 U.S. 319 (2006)..................................................................................13

*LaMar v. Ebert*,
    681 Fed. App'x. 279 (4th Cir. 2017) ................................................3, 9, 11

*Lewis v. Casey*,
    518 U.S. 343 (1996)..................................................................................18

*MBA Eng'g, Inc. v. Vantage Benefits Adm'rs, Inc.*,
    No. 3:17-CV-3300-L, 2019 WL 3759277 (N.D. Tex. Aug. 9, 2019)...............13

*McDonough v. Smith*,
    139 S. Ct. 2149 (2019)...........................................................................6, 7

*McDowell v. Alvarez*,
    No. 09 C 8033, 2012 WL 3481642 (N.D. Ill. Aug. 15, 2012)..........................3

*Medina v. California*,
    505 U.S. 437 (1992)....................................................................................8

*Medley ex rel. Chrissy F. v. Miss. Dep't of Pub. Welfare*,
    925 F.2d 844 (5th Cir. 1991) .......................................................................5

*Meinhard v. State*,
    71 P.3d 37 (Utah 2016).............................................................................17

*Napue v. People of State of Ill.*,
    360 U.S. 264 (1959)..................................................................................16

*Nebraska v. Pratt*,
    842 N.W.2d 800 (Neb. 2014).....................................................................11

*Newton v. City of New York*,
    681 F. Supp. 2d 473 (S.D.N.Y. 2010).........................................................11

*Pennsylvania v. Finley*,
    81 U.S. 551 (1987)....................................................................................17

*Pettway v. McCabe*,
    2011 WL 13141440 (M.D. Fla. Sept. 27, 2011), *aff'd*,
    510 F. App'x 879 (11th Cir. 2013) ...............................................................8

*Prince v. Wallace*,
    568 F.2d 1176 (5th Cir. 1978) .....................................................................7

*Ramming v. United States,*
    281 F.3d 158 (5th Cir. 2001) ....................................................................3

*R.B. v. Livers,*
    No. 12-00679-BAJ-SCR, 2014 WL 1328000 (M.D. La. Mar. 31, 2014)..........................5

*Ryland v. Shapiro,*
    708 F.2d 967 (5th Cir. 1983) ..................................................................18

*In re Sagin,*
    No. H044767, slip op. (Cal. Ct. App. Aug. 30, 2019) ......................................13

*Savory v. Lyons,*
    469 F.3d 667 (7th Cir. 2006) ...................................................................7

*Skinner v. Switzer,*
    562 U.S. 521 (2011)...................................................................... *passim*

*State v. Swearingen,*
    424 S.W.3d 32 (Tex. Crim. App. 2014)........................................................13

*Strickland v. Washington,*
    66 U.S. 668 (1984)..........................................................................17

*Swearingen v. Keller,*
    No. A-16-cv-1181, 2017 WL 6803366 (W.D. Tex. Nov. 9, 2017) ...............................5

*United States v. Ausby,*
    916 F.3d 1089 (D.C. Cir. 2019)...............................................................16

*United States v. Bagley,*
    473 U.S. 667 (1985)........................................................................17

*United States v. Fasano,*
    577 F.3d 572 (5th Cir. 2009) .............................................................11, 13

*Wade v. Brady,*
    460 F. Supp. 2d 226 (D. Mass. 2006) ........................................................18

*Wade v. Monroe Cty. Dist. Attorney,*
    No. 3:15-cv-00584, 2017 WL 4413195 (M.D. Pa. Sept. 29, 2017)................................8

*Wooten v. Virginia,*
    154 F. Supp. 3d 322 (W.D. Va. 2016) .........................................................9

**AUTHORITIES**

28 U.S.C. § 1331 ...................................................................................................................3

28 U.S.C. § 1343 ...................................................................................................................3

28 U.S.C. § 1367 ...................................................................................................................3

28 U.S.C. § 1651 ...................................................................................................................3

28 U.S.C. § 2201 ...................................................................................................................3

28 U.S.C. § 2202 ...................................................................................................................3

42 U.S.C. § 1983 ...............................................................................................................1, 3

Tex. Code Crim. Proc. Ann. art. 64.03 ........................................................................2, 12, 14

Tex. Const. Article 1, Section 13 ........................................................................................19

Tex. Const. Article 1, Section 19 ........................................................................................19

Tex. Const. Article 1, Section 27 ........................................................................................19

U.S. Const. amend. VIII ....................................................................................................19

U.S. Const. amend. XI ....................................................................................................4, 5

U.S. Const. amend. XIV ............................................................................................. *passim*

Plaintiff Rodney Reed respectfully submits this Opposition to Defendant Goertz's Amended Motion to Dismiss for Want of Jurisdiction and Failure to State a Claim Upon which Relief Can Be Granted (the "Motion").[1] (Dkt. 22)

## INTRODUCTION

Goertz's derisive portrayal of the 21 years Rodney Reed has spent on death row proving that he did not murder Stacey Stites as an "incessant onslaught on his conviction" is both telling and alarming. (Mot. at 6) Reed's persistence has exposed the State's theory of the case against him as a forensic fallacy of such proportion that all of the State's own experts have run from their trial opinions, while three (now four) of the nation's most well-regarded pathologists agree that the State's case is "medically and scientifically impossible." (¶ 21) Goertz does not refute this proof; he waves it off as "irrelevant." (Mot. at 6)

Goertz's indignation toward Reed's diligent attempts to prove his innocence exemplifies Texas's known hostility to claims for postconviction relief. Article 64 was enacted to provide a critical pathway for the wrongly convicted to prove their innocence by mandating DNA testing when the statutory elements are met. The CCA, however, judicially imposed extra-statutory requirements that render access to evidence under Article 64 illusory and within the sole discretion of the prosecutor. As detailed in the Amended Complaint, the CCA's interpretation of Article 64 violates the protections afforded by the United States and Texas constitutions. Reed's claims are, therefore, properly pursued in federal court under 42 U.S.C. § 1983 ("§ 1983").

Goertz seeks dismissal of the Amended Complaint through the artifice of deliberately mischaracterizing Reed's claims and then attacking those mischaracterizations to argue that the Court lacks jurisdiction and that the Amended Complaint fails to state a claim. When the Court

---

[1]    Capitalized terms are defined in the Motion to Stay Execution ("Stay Motion"). (Dkt. 11)

views Reed's claims as actually pled, however, together with controlling Supreme Court authority, two things are apparent: (i) Goertz's jurisdictional gamesmanship has no legal support, and (ii) the well-pled facts alleged in the Amended Complaint state claims for relief. The Motion should be denied.

## FACTUAL BACKGROUND

For purposes of brevity, Reed incorporates the facts set forth in the Amended Complaint and the Stay Motion, along with the following additional facts.

Article 64.03 of the Texas Code of Criminal Procedure provides as follows:

> (a)   A convicting court may order forensic DNA testing under this chapter only if: (1)  the court finds that: (A)  the evidence: (i)  still exists and is in a condition making DNA testing possible; and (ii)  *has been subjected to a chain of custody sufficient to establish that it has not been substituted, tampered with, replaced, or altered in any material respect*; (B)  there is a reasonable likelihood that the evidence contains biological material suitable for DNA testing; and (C)  identity was or is an issue in the case; and (2)  the convicted person establishes by a preponderance of the evidence that: (A) the person would not have been convicted if exculpatory results had been obtained through DNA testing; and (B)  *the request for the proposed DNA testing is not made to unreasonably delay the execution of sentence or administration of justice*.

Tex. Code Crim. Proc. Ann. art. 64.03 (emphasis added)

Section (a)(1)(A)(ii) contains the chain of custody requirement at issue here (the "Custody Requirement") and requires a finding that the evidence is essentially what it purports to be. The Custody Requirement does not reference the DNA profile of the evidence sought to be tested at all, much less require a finding that the DNA profile of the evidence has never changed, i.e., was not "contaminated."

Likewise, Section (a)(2)(B) does not state when a motion seeking access to evidence pursuant to Article 64 motion must be filed; it only requires that the request not be made to unreasonably delay an execution of sentence or the administration of justice. The CCA stayed

2

Reed's previously scheduled execution—the same one it concluded Reed unreasonably sought to delay pursuant to Article 64—for more than four years. (Mot. at 3-4)

ARGUMENT[2]

## I.   CONTROLLING SUPREME COURT AUTHORITY MAKES CLEAR THAT *ROOKER-FELDMAN* DOES NOT STRIP THE COURT OF JURISDICTION.

Goertz argues that the *Rooker-Feldman* doctrine strips the Court of jurisdiction because Reed "challenges the CCA's application of Chapter 64 to him," and because the Amended Complaint addresses Goertz's involvement in the events that necessitated this suit. (Mot. at 6)[3] Of course the Amended Complaint addresses the application of Article 64 to Reed as well as Goertz's connection to the dispute; standing rules require Reed to do so. But providing factual background in a well-pled complaint challenging the constitutionality of Article 64 as construed by the CCA does not implicate *Rooker-Feldman*.

In *Skinner v. Switzer*, the Supreme Court rejected the argument Goertz advances here. 562 U.S. 521, 531 (2011) (noting that the *Rooker-Feldman* doctrine is a "narrow" rule applied "only twice … in the two cases from which the doctrine takes its name"). *See also LaMar v. Ebert*, 681 Fed. App'x 279, 287 (4th Cir. 2017). The Supreme Court conclusively held that the *Rooker-Feldman* doctrine does not apply to constitutional challenges to the Texas courts' construction of Article 64. *Id. See also McDowell v. Alvarez*, No. 09 C 8033, 2012 WL 3481642, at *5 (N.D. Ill. Aug. 15, 2012) (*Rooker-Feldman* is inapplicable when state courts construe statute in an unconstitutional manner). Goertz's attempt to distinguish *Skinner* is lacking. (Mot.

---

[2]     Motions to dismiss for lack of subject matter jurisdiction or for failure to state a claim should be denied unless there is no set of facts that, if proven, would entitle a plaintiff to relief under any possible theory. *See Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

[3]     Goertz does not dispute that the Court has statutory jurisdiction over this suit pursuant to 28 U.S.C. §§ 1331, 1343, 1367, 1651, 2201, 2202 and 42 U.S.C. § 1983 ("§ 1983").

3

at 6) Reed, like Skinner, named the district attorney who controlled the evidence and alleged that she refused to permit DNA testing. (¶ 8 ("Just like in *Osborne* and *Skinner*, Defendant Goertz has the power to control access to the evidence Mr. Reed seeks to test."). More importantly, Skinner's complaint did not even expressly allege, as does the Amended Complaint, that the CCA unconstitutionally construed Article 64. Skinner alleged that the "State's refusal 'to release the biological evidence for testing … deprived him of his liberty interests in utilizing'" Article 64. *Id.* at 530. During oral argument, Skinner's counsel "clarified" that Skinner was alleging a due process challenge to Article 64 "'as construed' by the Texas courts." *Id.* Citing federal notice pleading standards, the Supreme Court held that *Rooker-Feldman* did not, therefore, bar Skinner's suit. *Id.* at 532-33. Even if *Skinner* had not rejected the game of jurisdictional "gotcha" Goertz attempts to play here, the Amended Complaint is clear that Reed challenges the constitutionality of Article 64 as authoritatively construed by the CCA:

> This action under [§ 1983] ***challenges the constitutionality of Article 64 both on its face and as interpreted, construed and applied by the CCA***. Specifically, this action raises the constitutional violations that flow from the extra-statutory conditions that the CCA imposed on Article 64, conditions which effectively preclude most DNA testing absent State consent and eviscerate the relief that Article 64 was designed to provide.

 (¶ 2 (emphasis added); *see also* ¶¶ 75-97)) *Rooker-Feldman* does not apply.

## II.    GOERTZ IS NOT IMMUNE FROM SUIT.

Goertz argues that the Eleventh Amendment immunizes him from suit, irrespective of the relief sought, because he is an elected State official with absolute prosecutorial immunity. (Mot. at 6-9) With respect to his Eleventh Amendment immunity claims, Goertz contends that the long-standing exception to immunity recognized in *Ex parte Young*, 209 U.S. 123 (1908), does not apply because: (i) Reed does not seek injunctive relief, and (ii) Reed should have sued the CCA, not him. (Mot. at 7-8) Neither of these arguments is meritorious.

4

*First*, Goertz is correct that the Eleventh Amendment does not immunize state officials from claims seeking injunctive relief. (*See* Mot. at 7) But it does not follow that Goertz is automatically immune just because Reed removed his request for injunctive relief to respond to the Court's decision in *Swearingen v. Keller*, No. A-16-cv-1181, 2017 WL 6803366 (W.D. Tex. Nov. 9, 2017). Goertz fails to address that state officials have no immunity from claims for declaratory relief, such as Reed seeks here. *See Medley ex rel. Chrissy F. v. Miss. Dep't of Pub. Welfare*, 925 F.2d 844, 849 (5th Cir. 1991); *Ass'n of Am. Physicians & Surgeons, Inc. v. Tex. Med. Bd.*, No. A-08-CV-675-LY, 2011 WL 13273839, at *3 (W.D. Tex. July 27, 2011) ("Neither sovereign nor qualified immunity prevent [the plaintiff] from pursuing declaratory and injunctive relief against the state officials.") (alteration in original) (citation omitted); *R.B. v. Livers*, No. 12-00679-BAJ-SCR, 2014 WL 1328000, *3 (M.D. La. Mar. 31, 2014) (*Ex parte Young* applies when the relief sought is declaratory or injunctive) (citation omitted).

*Second*, Goertz's claim that he has no connection to this suit (and that Reed should have sued the CCA) (Mot. at 7-8) contradicts his *Rooker-Feldman* argument (*id.* at 6) and is unsupported by the facts pled and Fifth Circuit authority. The Amended Complaint alleges that Goertz himself urged the challenged construction of Article 64 upon the CCA and continues to rely on it to deny access to postconviction DNA testing of evidence within his custody. *See Air Evac EMS, Inc. v. Texas Dep't of Ins. Div. of Workers Comp.*, 851 F.3d 507, 519 (5th Cir. 2017) ("reliance on the [unconstitutional] statute to deny … protection" qualifies as enforcement for purposes of the *Ex parte Young* exception) (citation omitted); *Hall v. Louisiana*, 983 F. Supp. 2d 820, 831-32 (M.D. La. 2013) (Eleventh Amendment does not apply where state officials are "specifically charged with the duty to enforce the [unconstitutional] [p]lan and are currently exercising … that duty") (citation omitted).

With respect to his claim that he is entitled to "absolute prosecutorial immunity," Goertz concedes that immunity is inapplicable insofar as he is sued, as is the case here, "only in his official capacity and solely for declaratory relief." (Mot. at 8) Moreover, the one case Goertz cites is inapposite because the plaintiff in it demanded money damages; money damages are not requested here. (Mot. at 8-9 (citing *Esteves v. Brock*, 106 F.3d 674, 677 (5th Cir. 1997)) Moreover, absent is any discussion of *Skinner*, an analogous case which shows that Reed has sued the proper party. *Skinner*, 562 U.S. at 530 (federal district court had subject matter jurisdiction to adjudicate a § 1983 complaint against a county district attorney challenging the constitutionality of Article 64 as construed by the Texas courts); *Elam v. Lykos*, 470 Fed. App'x 275 (5th Cir. 2012) (same). Goertz is not immune from suit here.

## III.   REED'S CLAIMS ARE TIMELY.

Goertz contends that Reed's § 1983 claims are time-barred under the applicable two-year statute of limitations, but he ignores the procedural history of Reed's Article 64 case. Goertz argues that Reed's § 1983 claims accrued in 2014 when the district court denied his Article 64 motion, or on April 12, 2017, when the CCA affirmed the district court. (Mot. at 8) Two important procedural facts, both which Goertz fails to acknowledge, show that this action is timely. *First*, the CCA denied Reed's motion for reconsideration of his Article 64 appeal on October 4, 2017; and, more importantly, *second*, the Supreme Court denied Reed's petition for a writ of certiorari from the CCA's decision on June 25, 2018. (¶¶ 50-51) Reed commenced this suit on August 8, 2019, well within two years of both of those events. (Dkt. 1)

As the Supreme Court recently reiterated, a § 1983 claim accrues "when the plaintiff has a 'complete and present cause of action.'" *McDonough v. Smith*, 139 S. Ct. 2149, 2155 (2019) (citing *Wallace v. Kato*, 549 U.S. 384, 388 (2007)). Reed's claims did not accrue, therefore, until June 25, 2018, when the Supreme Court denied his petition for a writ of certiorari. *Cf. Prince v.*

*Wallace,* 568 F.2d 1176, 1178 (5th Cir. 1978) ("[L]imitation period began to run on the date of final denial [upon application for reconsideration] of the … petition to the United States Supreme Court for a writ of certiorari."). Had Reed not sought Supreme Court relief, the suit would still be timely because the final action taken by the Texas courts in his Article 64 case occurred when the CCA denied his motion for reconsideration on October 4, 2017.

In *McDonough*, the Supreme Court held that the statute of limitations on a § 1983 claim "began to run when the criminal proceedings … terminated." *McDonough*, 139 S. Ct. at 2161. The Supreme Court addressed the important concerns that "parallel criminal and civil litigation over the same subject matter and the related possibility of conflicting civil and criminal judgments" would "run counter to core principles of federalism, comity, consistency, and judicial economy." *Id.* at 2157-58. Those concerns apply here. It would have made no sense for Reed to pursue a § 1983 action in federal court when such claims could have been mooted if he was successful on appeal or in the Supreme Court. *See, e.g.*, *Skinner*, 562 U.S. at 530-31 n.8 (stressing preference for complainants to first seek relief in the state court before resorting to federal tribunals).

The one case Goertz cites, *Savory v. Lyons*, 469 F.3d 667, 673 (7th Cir. 2006), contradicts Supreme Court rationale, makes no sense when applied to the procedural history of this case and is not binding in any event. For example, the district court's 2014 denial of Reed's Article 64 motion did not address the Custody Requirement at all. (¶ 40, Ex. B) Reed's claims challenging the Texas courts' interpretation of that element could not possibly have accrued at that time. Moreover, unlike in *Savory*, the alleged constitutional harm here is not simply the failure to release the evidence, but rather the CCA's construction of Article 64.

Moreover, more recent cases have held that the statute of limitations for § 1983 claims seeking DNA testing accrues at the end of the state litigation, *i.e.*, after the Supreme Court denies certiorari or after the time for filing the certiorari petition has expired. *See, e.g.*, *Wade v. Monroe Cty. Dist. Attorney*, No. 3:15-cv-00584, 2017 WL 4413195, at *7 (M.D. Pa. Sept. 29, 2017) (holding that "last possible date" in the state litigation was the date when filing a certiorari petition expired and noting that "[a]lmost every court that has considered this issue has ruled that the statute of limitations on section 1983 claims based on denial of [the] right to access modern DNA testing begins to run at the end of the state litigation in which an inmate unsuccessfully sought access to such testing") (alteration in original) (quotations and citations omitted); *Pettway v. McCabe*, 2011 WL 13141440, at *1 (M.D. Fla. Sept. 27, 2011) (statute of limitations on § 1983 claim began to run "when the United States Supreme Court denied [p]laintiff's petition for writ of certiorari"), *aff'd*, 510 F. App'x 879 (11th Cir. 2013).

Because Reed's § 1983 cause of action was only complete when the CCA's construction of Article 64 became final, after the Supreme Court denied his certiorari petition (July 25, 2018), or, at the earliest, when the CCA denied his motion for reconsideration (October 4, 2017), his claims are timely.

## IV.    REED STATES A CLAIM FOR RELIEF.

### A.  Reed States A Claim For Denial Of Procedural Due Process (Count I).

Because Article 64 provides a means for obtaining postconviction forensic DNA testing, its procedures must be imbued with procedural fairness consistent with due process. *See Dist. Attorney's Office for Third Judicial Dist. v. Osborne*, 557 U.S. 52, 71 (2009). A state cannot, consistent with due process, construe a statutorily afforded right in a manner that "offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Medina v. California*, 505 U.S. 437, 445 (1992). Due process thus requires that a

person "actually receive process if [p]laintiff follows administrative remedies, not the illusory 'opportunity' to request process that will never be given." *Wooten v. Virginia*, 154 F. Supp. 3d 322, 333 (W.D. Va. 2016).

A plaintiff states a valid § 1983 claim by alleging that a state court construed a statute in a manner that violates procedural due process. *See Skinner*, 562 U.S. at 530; *LaMar*, 681 Fed. App'x at 289 (allegations that denial of DNA testing deprived plaintiff of "liberty interests in utilizing state procedures to obtain reversal of his conviction" stated a § 1983 claim). The "complaint need not pin plaintiff's claim for relief to a precise legal theory." *Skinner*, 562 U.S. at 530. Rather, Federal Rule of Civil Procedure 8(a)(2) "requires only a 'short and plain' statement of the plaintiff's claim, not an exposition of his legal argument." *Id.* Reed has more than satisfied his pleading burden. The Amended Complaint devotes 35 paragraphs to the detailed explanation of how the CCA's construction of Article 64 is fundamentally unfair and why it has rendered the statute illusory. (*See* ¶¶ 52-87) Those allegations state a claim. Goertz's assertions to the contrary lack merit.

### 1.      Reed's Procedural Due Process Chain of Custody Claim is Well-Pled.

Goertz's repeated attacks on Reed's claim predicated on the Custody Requirement are convoluted and miss the substance of the claim. Goertz argues that, under general principles, chain of custody requirements ensure "'the identity and integrity of physical evidence,'" but that chain of custody must mean something different under Article 64. (Mot. at 10-11) (emphasis and citation omitted) Goertz acknowledges that the CCA added a novel chain of custody standard to Article 64 that the Texas legislature did not include. *Id.* But he fails to address how that new, extra-statutory standard comports with due process. Instead, Goertz repeatedly states that the CCA accepted his argument that the Custody Requirement could not be met because State's handling and storing of the evidence may have "contaminated" the evidence by introducing

additional DNA to it. That is true; however, the Custody Requirement only requires that a court find that the evidence is what it purports to be, and no one disputes that each piece of evidence Reed sought to test is what it purports to be. (*Id.* at 11-12) In other words, the belt is the belt that was used to strangle Stites and the employee name tag is the one found in the crook of her knee. Goertz then quotes *Osborne* to highlight the sensitivity of DNA tests and the need for careful evaluation of the results, *id.* at 12, but he does not link that observation to the claims at issue here because there are no results yet to evaluate.

These arguments fail to identify any legal flaws in Reed's claim. Reed alleges that the CCA imposed an extra-statutory element on the Custody Requirement that precludes a finding of chain of custody if the DNA profile ever changes for any reason, including at the State's literal hands. Reed alleges that this construction of the Custody Requirement, in a manner that is inconsistent with its usual and customary meaning, is fundamentally unfair because it renders Article 64 illusory by providing a process to request a remedy that, absent State consent, need never be afforded. (¶¶ 52-55) Reed identifies with particularity the evidence improperly excluded by the extra-statutory test; the CCA's reasoning; the unrebutted testimony of the State's experts that the items Reed sought to test had "not been substituted, tampered with, replaced, or altered in any material respect"; and the unrebutted testimony of Reed's experts that established that meaningful, reliable, and exculpatory test results could be obtained despite the alleged potential for "contamination" due to the State's storage conditions. (¶¶ 39, 79-82)

Reed further alleges that the Custody Requirement, as construed by the CCA, unconstitutionally narrows the scope of Article 64's separate "exculpatory results" element by excluding evidence that, if tested, could identify a third-party perpetrator in DNA databases or produce a consistent profile across multiple items of evidence. (¶ 56) Reed also alleges that the

Custody Requirement, as construed by the CCA, unconstitutionally limits the ability to pursue other state statutory remedies, including the right to seek habeas relief, a new trial, and executive clemency. (*Id.* ¶¶ 77-78) These allegations amply meet federal notice pleading standards and state a claim upon which relief can be granted. *See Skinner*, 562 U.S. at 530 (complaint stated due process claim for deprivation of liberty interests in utilizing state procedures to obtain reversal of conviction, pardon or reduction of sentence "sufficient to cross the federal court's threshold"); *LaMar*, 681 Fed. App'x at 286 (reversing district court's denial of DNA testing where lack of DNA testing would prevent appellant from accessing state procedures to potentially obtain a reversal, pardon or sentence reduction).

The constitutional underpinnings of Reed's claim are also supported by decisions that flatly reject the imposition of a more stringent chain of custody standard in postconviction DNA testing. *See United States v. Fasano*, 577 F.3d 572, 576 (5th Cir. 2009) ("We do not read the statute to impose a more exacting standard for a showing of the chain of custody in a proceeding under the Innocence Act than would be demanded in a trial itself. Indeed there is argument with some purchase, that the trial standard is itself too exacting for an inquiry into whether tests should be ordered. This is because much of the uncertainty inherent in this predictive exercise can be dispelled only by the tests a petitioner is seeking."); *see also Nebraska v. Pratt*, 842 N.W.2d 800, 811 (Neb. 2014) ("if we were to interpret the physical integrity prong as demanding that the biological evidence was secured in a way likely to avoid accidental contamination with extraneous DNA from epithelial cells, then the express purposes of the Act would be undermined"); *Newton v. City of New York*, 681 F. Supp. 2d 473, 491 (S.D.N.Y. 2010) ("[D]ue [P]rocess rights have been violated if attempts to locate the evidence are frustrated due to a poor or non-existent evidence management system"). Reed's claim challenges the CCA's construction

11

of the Custody Requirement because it allows the State to unilaterally deny access to evidence testing by claiming—without evidence—that the DNA profile has changed, especially due to the State's treatment of evidence, thus penalizing applicants for the State's own spoliation, such as Goertz claims occurred here.

### 2. Reed's Due Process Exculpatory Results Claim is Well-Pled.

Reed's due process claims also encompass Article 64's materiality requirement, which requires that before DNA testing of biological material may be ordered, the court must find that evidence exists in a condition suitable for DNA testing, and that such testing could yield exculpatory results. *See* Tex. Code Crim. Proc. Ann. art. 64.03. Reed contends that the CCA construed Article 64.03 to deny Due Process in two key ways. *First*, he alleges that the CCA arbitrarily refused to consider the potential exculpatory effects of DNA testing without considering  evidence that the State's expert testimony used to convict Reed at trial has been formally withdrawn, and that new expert testimony admitted in Reed's postconviction proceedings establishes his innocence. (¶¶ 58-74, 82) *Second*, Reed alleges that the CCA's interpretation of Article 64's "exculpatory results" element violates Due Process by limiting the analysis solely to evidence that would exonerate the applicant and rejecting evidence that inculpates a third party.  (*Id.* ¶¶ 56, 68-69, 76, 79, 82, 85)

As an initial matter, Goertz does not challenge the adequacy of the allegations that focus on the CCA's refusal to consider the recantation of trial expert testimony or supplemental postconviction expert testimony. Goertz has, therefore, waived any argument that these components of Reed's claims fail to state a claim for relief.[4]  *Breitling v. LNV Corp.*, 716 Fed.

---

[4]     The Motion includes a separate section that addresses paragraph 86 of the Amended Complaint under a header misleadingly captioned "Due process does not mandate a particular

*(cont'd)*

App'x 338, 339 (5th Cir. 2018) (issues not raised in opening brief deemed "abandon[ed]"); *MBA Eng'g, Inc. v. Vantage Benefits Adm'rs, Inc.*, No. 3:17-CV-3300-L, 2019 WL 3759277, at *3 n.5 (N.D. Tex. Aug. 9, 2019) (same).

Goertz's sole argument is that the aspect of Reed's materiality claim that focuses on exoneration-only evidence should be viewed as a substantive due process challenge rather than a procedural due process claim recognized in *Osborne*. (Mot. at 13) This argument is wrong; the Amended Complaint alleges a procedural due process claim (*see* ¶¶ 78-87), and the case Goertz relies upon, *State v. Swearingen*, 424 S.W.3d 32, 39 (Tex. Crim. App. 2014), does not suggest otherwise.[5] Reed's claim is premised on settled authority recognizing that evidence that inculpates third parties is *categorically* exculpatory. *See Holmes v. South Carolina*, 547 U.S. 319, 331 (2006) (criminal defendants have constitutional right to present defense evidence inculpating third parties); *Chambers v. Mississippi*, 410 U.S. 284, 302 (1973) (trial court's exclusion of evidence inculpating third party resulted in a trial that violated due process); *Fasano*, 577 F.3d at 578 (recognizing that "strong case" against defendant would "evaporate" if another suspect's DNA were found on physical evidence collected from crime scene and later stored in paper bag and handled after trial; reversing denial of DNA testing under federal Innocence Protection Act); *In re Sagin*, No. H044767, slip op. at 13-14 (Cal. App. Aug. 30, 2019) (vacating murder conviction after more than 30 years when postconviction DNA testing of

---

*(cont'd from previous page)*

*style* of materiality review." (Mot. at 15 (emphasis added)) Reed addresses this argument in Section 6, *infra*.

[5]     *Swearingen* neither considers nor decides whether the CCA's interpretation of "exculpatory results" satisfies due process. The CCA found that the appellee did not establish that biological material existed for testing, and the law of the case doctrine applied to bar appellee's motion.  424 S.W.3d 32, 34, 36 (Tex. Crim. App. 2014). These conclusions are not relevant here.

victim's fingernail scrapings revealed unknown DNA profile; DNA results were "powerful evidence the victim was killed by someone other than Jack Sagin"). Reed's due process exculpatory results claim is legally sufficient.

### 3. Reed's Procedural Due Process Article 64 Findings Claim Is Well-Pled.

The Amended Complaint alleges, and Goertz acknowledges,[6] that a fundamental breakdown in procedure occurred when the district court signed both Reed's and the State's opposing proposed findings of fact and conclusions of law. The CCA compounded this procedural anomaly when it failed to either vacate the district court's entry of Reed's proposed findings or order DNA testing, as statutorily required once the district court signed those findings.[7] (¶¶ 42-50, 83) Reed contends that, as construed by the CCA, Article 64 unfairly permits entry of conflicting court orders, including those that mandate DNA testing, without either implementing the requisite testing or vacating the order requiring it. Goertz's argument that "procedural perfection" is not required because Reed asserts a substantive due process right rather than a procedural one is unsupported by any applicable authority. (Mot. at 13-14) Reed has pled constitutional violations flowing from this aspect of his Article 64 proceeding. And, regardless of whether the district court's entry of inconsistent findings constitutes an independent constitutional violation, it certainly undermines any presumption of regularity in the resolution of Reed's request for DNA testing.

---

[6]     (*See* Mot. at 14 (acknowledging "scrivener's error"))

[7]     By adopting Reed's findings and conclusions, the district court triggered a provision of Article 64 mandating that DNA testing go forward. *See* Tex. Code Crim. Proc. Ann. art. 64.03(c) ("If the convicting court finds in the affirmative the issues listed in Subsection (a)(1) and the convicted person meets the requirements of Subsection (a)(2), the court *shall* order that the requested forensic DNA testing be conducted.") (emphasis added). (¶ 83)

### 4.    Reed Did Not Unreasonably Delay In Seeking Touch DNA Testing.

Goertz urges the Court to dismiss this suit because "'there does not appear to be any factual or legal impediments that prevented [Reed] from availing himself of post-conviction DNA testing earlier'" than he did. (Mot. at 14-15) This argument is baseless. Reed first sought DNA testing in 1999, and then again in 2014, after Article 64 was amended to make touch DNA testing available. (¶¶ 32, 84) Goertz's contention that Reed should have requested touch DNA testing at least eight years before touch DNA testing was available under the law has no basis in any constitutional concept of diligence.

### 5.    Reed Adequately Pleads A Procedural Due Process Claim Regarding Article 64's Reliance On Recanted Expert Trial Testimony.

Goertz devotes three pages of argument to Paragraph 86 of the Amended Complaint. (Mot. at 15-17) In Paragraph 86, Reed alleges that Article 64, as construed by the CCA, unconstitutionally requires courts to accept as true trial evidence that has been proven false. Specifically, here, the CCA held that the trial testimony of the State's three experts used to convict Reed must be accepted as true, notwithstanding the subsequent recanting and/or discrediting of that same testimony. In other words, Goertz contends that if the State learns during postconviction proceedings that its witnesses' testimony or opinions were false, the postconviction court must still evaluate all exculpatory evidence against that false trial evidence as though it were in fact true.

Reed likewise contends that Article 64, as construed by the CCA, unconstitutionally requires the court to ignore unrebutted expert evidence of innocence that has been admitted into the evidentiary record by Texas courts in postconviction proceedings. (¶ 86) Goertz accuses Reed of seeking "an unprecedented expansion of constitutional law" that would "effectively cause a full-blown retrial every time a convicted person requested postconviction DNA testing."

(Mot. at 15-16) Unless Goertz is assuming that defendants are usually convicted based on evidence the State later discovers to have been false, he has entirely misconstrued Paragraph 86.

Reed does not allege that procedural due process requires a "full-blown retrial" or "open-ended fact finding." (Mot. at 15-16) Instead, he claims that the long-standing, deeply ingrained constitutional prohibition on the use of false evidence to procure or preserve a conviction be given full force and effect in the Article 64 context. *See, e.g.*, ¶¶ 61-67; *see also United States v. Ausby*, 916 F.3d 1089, 1092 (D.C. Cir. 2019) (scientifically invalid testimony by FBI hair comparison expert is "false" testimony that should be imputed to the government under *Napue v. People of State of Ill.*, 360 U.S. 264, 269 (1959)); *Ex parte Tiede*, 448 S.W.3d 456, 459 (Tex. Crim. App. 2014) (scientifically invalid and later recanted testimony by psychiatrist violated due process); *cf. Ex parte Gandy*, No. WR-22,074-10, 2019 WL 2017291, at *1 (Tex. Crim. App. May 8, 2019) (granting statutory new trial where "but for the false testimony of the F.B.I. examiner, Applicant would not have been convicted of this offense").

Notably, Goertz does not dispute that the State's expert trial opinions have in fact been recanted, retracted or proven false, or that Reed has developed and introduced into evidence in his postconviction proceedings substantial expert testimony of his innocence, which the State has never rebutted. Instead, he attempts to distract the Court from this rare and critical truth. He does so by citing authorities that are inapposite to the issues presented here and addressing claims that Reed does not make. For example, Goertz relies upon a pair of Supreme Court decisions declining to find specific substantive due process rights for inmates.  (Mot. at 16 (citing *Murray v. Giarratano*, 492 U.S. 1 (1989), and *Ryan v. Gonzales*, 568 U.S. 57 (2013)) Those decisions do not address the procedural due process violations pled here. A third decision Goertz cites actually supports Reed's claims in that it confirms that procedural due process rights apply

because Texas chose to provide a postconviction statutory procedure. *See Pennsylvania v. Finley*, 481 U.S. 551, 557-58 (1987) (noting that court has "rejected the State's argument that since it need not provide an appeal in the first place, it could cut off a defendant's appeal without running afoul of the Due Process Clause") (citation omitted). As the Court emphasized in *Finley*, "when a state opts to act in a field where its action has significant discretionary elements, it must nonetheless act in accord with the dictates of the Constitution—and, in particular, in accord with the Due Process Clause." *Id.* (quotations and citation omitted). Goertz argues that taking into account the recantation of expert trial evidence is itself an impermissible expansion of the trial record (*see* Mot. at 16), but that is neither accurate nor supported by his cited authorities.[8]

## B.     Reed States A Right to Access The Courts Claim (Count II).

As discussed above, when a state creates a judicial remedy, access to that remedy must be fairly afforded. *See Bounds v. Smith*, 430 U.S. 817 (1977). Reed has pled facts from which the

---

[8]     *Meinhard v. State*, which does not address recanted trial testimony, supports Reed's claim by emphasizing that "the parties must have the opportunity to present evidence necessary to interpret or contextualize the DNA profile generated by DNA testing." 371 P.3d 37, 45 (Utah 2016). *Anderson v. State* likewise does not limit evidence to be considered; indeed, it requires the court to consider the entire evidentiary record, and supports Reed's claim as well: "[W]here the DNA test could exonerate the defendant, it does not matter how strong the other evidence [at trial] might have been." 831 A.2d 858, 867 (Del. 2003). Goertz also misstates the Supreme Court's grounds for overturning the Ninth Circuit in *Osborne*: the relevant issue was not the materiality of new test results relative to "'the state of the evidence as it existed at trial,'" as Goertz wrongly states (Mot. at 17 (citation omitted)), but rather that the testing sought was not a newly available technique and had been strategically not sought at trial. *See Osborne*, 557 U.S. at 71. Indeed, the Court observed that if the applicant were to then seek a more advanced form of testing in the state process, precisely as Reed did in 2014, when Article 64 was amended to permit touch DNA testing, "he might well get it." *Id*. Finally, although Goertz invokes both *Bagley* and *Strickland*, neither applies because they involved events that *occurred at trial. See United States v. Bagley*, 473 U.S. 667, 681-82 (1985) (erroneous exclusion of impeachment evidence); *Strickland v. Washington*, 466 U.S. 668, 695-96 (1984) (ineffective assistance of counsel).

Court can infer that Article 64, as construed by the CCA, deprives him of his constitutional right of access to courts under the First and Fourteenth Amendments by denying him access to evidence needed to pursue claims of innocence and other remedies, including executive clemency. (¶¶ 88-92) Goertz contends that this claim is deficient because the right of access to the courts "does not encompass the ability 'to *discover* grievances, and to *litigate effectively* once in court.'" (Mot. at 17 (citing *Lewis v. Casey*, 518 U.S. 343, 350, 354 (1996))

Goertz again mischaracterizes Reed's claim and then attacks the false construct he has created with authority that actually supports the claims Reed makes. For example, in *Lewis*, the Supreme Court held that the constitutional right of access to courts encompasses the tools that "inmates need in order to attack their sentences, directly or collaterally[.]" *Lewis*, 518 U.S. at 355. Reed alleges that Article 64, as construed by the CCA, denied him access to the courts by unfairly constraining the ability of applicants to access evidence through Article 64 to prove their innocence and avail themselves of other state law remedies, such as clemency. Article 64 was intended to provide access to evidence needed to obtain postconviction relief; however, as now construed by the CCA, the statute imposes an intolerable and almost insurmountable barrier to the right of access to the courts. *See Ryland v. Shapiro*, 708 F.2d 967, 971-76 (5th Cir. 1983) (access to courts violation occurs when state actors impede a potential litigant's access to evidence); *see also Wade v. Brady*, 460 F. Supp. 2d 226, 250 (D. Mass. 2006) ("Denying prisoners access to potentially exculpatory DNA evidence limits meaningful access to the courts in even more profound terms than denying access to a law library or attorney."); *Osborne*, 557 U.S. at 55 ("DNA testing has an unparalleled ability both to exonerate the wrongly convicted and to identify the guilty.") Reed states an access to courts violation.

**C.      Reed States A Claim for Violation Of The Eighth Amendment (Count III).**

Because the Eighth Amendment requires that punishments be proportionate to culpability, courts may not contrive a procedure in which a defendant has no means of challenging his culpability or proving his actual innocence. *In re Davis*, 557 U.S. 952, 953-4 (2009) (Stevens, Ginsberg and Breyer, JJ., concurring) ("it 'would be an atrocious violation of our Constitution and the principles upon which it is based' to execute an innocent person") (citations omitted). Here, the CCA has construed Article 64 in such a manner as to deny Reed access to evidence that may conclusively prove his innocence in violation of the Eighth Amendment.

**D.      Reed States A Claim For Violations Of The Texas Constitution (Count IV).**

Goertz argues that Reed's claim for violations of the Texas Constitution should be dismissed because Reed's claims for violations of the United States Constitution should be dismissed. (Mot. at 20) As demonstrated above, Reed's federal Constitutional claims are well-pled; for the same reasons, so too are his claims under Article I, Sections 13, 19 and 27 of the Texas Constitution. In fact, Texas courts have recognized that the Texas Constitution's "open courts" protections exceed those of the Due Process Clause:

> The Fourteenth Amendment provides the floor for Texas citizen's due process rights while the Texas Constitution provides the ceiling. *LeCroy,* 713 S.W.2d at 338.Thus, federal due process analysis is relevant as articulating a due process floor, even though the Texas Constitution's open courts provision provides more due process protection.

*Boyd v. Kallam*, 152 S.W.3d 670, 681 (Tex. App. 2004).   Accordingly, Reed independently states a claim for violation of the Texas Constitution.

## CONCLUSION

For the reasons stated above, Reed respectfully requests that the Court deny the Motion and allow this action to proceed.

DATED: October 22, 2019

Cliff C. Gardner (*admitted pro hac vice*)
Robert A. Weber (*admitted pro hac vice*)
Nicole A. DiSalvo (*admitted pro hac vice*)
Shaivlini Khemka (*admitted pro hac vice*)
**SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP**
One Rodney Square
P.O. Box 636
Wilmington, Delaware  19899-0636
(302) 651-3000

*Of Counsel*

/s/ Bryce Benjet
Bryce Benjet
**THE INNOCENCE PROJECT**
40 Worth Street, Suite 701
New York, New York  10013
(212) 364-5980
bbenjet@innocenceproject.org

Andrew F. MacRae
**LEVATINO PACE PLLC**
1101 S. Capital of Texas Highway
Building K, Suite 125
Austin, Texas  78746
(512) 637-8565
amacrae@levatinopace.com
*Attorneys for Plaintiff Rodney Reed*

**CERTIFICATE OF SERVICE**

I certify that on this 22nd day of October, 2019, I electronically filed the foregoing pleading with the clerk of the court for the U.S. District Court, Western District of Texas, using the electronic case filing system.  A "Notice of Electronic Filing" was sent to Counsel for Defendant at the following email address:

Matthew Ottoway
Assistant Attorney General
matthew.ottoway@oag.texas.gov

*Bryce Benjet*
Bryce Benjet